CITY OF DETROIT, *for use of* WATSON, *v.* BLUE RIBBON
AUTO DRIVERS' ASS'N.

1. PRINCIPAL AND SURETY—INFERENCES—SURETY FOR HIRE.
   Inference may be drawn that corporation acting as surety on
   taxicab owner's bond was so acting for hire.

2. SAME—CONSTRUCTION OF BOND—SURETIES FOR HIRE.
   Bonds of sureties for hire are more strictly construed against
   them than are bonds against gratuitous sureties.

3. SAME—SURETY ADOPTING WORDING BOUND THEREBY.
   Surety for hire adopting its own wording in bond is bound
   thereby.

4. SAME—OBLIGATION OF SURETY FOR HIRE IN NATURE OF INSURANCE.
   Obligation of surety for hire is in nature of insurance, and in
   construction of such contracts courts usually invoke rules ap-
   plicable to insurance.

5. SAME—CONSTRUCTION OF BOND—INTENT.
   Bond given by surety for hire to afford protection to general
   public, if its terms permit, should be so construed as to ac-
   complish that purpose.

6. SAME—LIABILITY OF SURETY ON TAXICAB OPERATOR'S BOND—
   ORDINANCES.
   Where surety for hire on taxicab operator's bond did not limit
   its liability to license period, but liability was assumed for
   damages ''to any person or property caused by the negligent
   operation of such taxicab,'' and the bond also provided that
   the surety would be liable in case taxicab was operated in
   violation of ordinance, the surety was liable for damages caused
   by negligent operation of taxicab after expiration of license
   in violation of city ordinance.

Error to Wayne; Houghton (Samuel G.), J., pre-
siding.   Submitted January 13, 1931.   (Docket No.
89, Calendar No. 35,410.)   Decided June 1, 1931.

Assumpsit by the People of the City of Detroit for the use and benefit of Amanda Watson against Blue Ribbon Auto Drivers' Association, Inc., a Michigan corporation, on a taxicab operator's bond. Judgment for plaintiff. Defendant brings error. Affirmed.

*Edward G. Kemp,* for plaintiff.

*Edward N. Barnard,* for defendant.

NORTH, J.   James Dunbar procured a license for the calendar year 1924 and gave a bond under which he operated a taxicab in the city of Detroit. He continued to operate his cab during 1925, but did not secure a 1925 license until March 6th of that year. On January 6, 1925, Amanda Watson, plaintiff herein, was struck and seriously injured by Dunbar's cab. The accident was due to the carelessness and recklessness of the driver. Mrs. Watson sued Dunbar and recovered a judgment on which there is unpaid an amount in excess of the bond. In this suit against the surety on the bond, tried before the court without a jury, Mrs. Watson had judgment for the amount of the bond, $1,000. Defendant reviews by writ of error and states in its brief:

"There is but one question involved in this case, and that is whether any liability arises under the bond filed March 29, 1924, by reason of the operation of such taxicab on January 6, 1925, six days subsequent to the expiration of the license for which the bond was filed.  *  *  *  Was the bond in force and effect and did the surety's liability continue as to acts occurring subsequent to the expiration of the license December 31, 1924? "

The Detroit ordinance provides that no person, firm, or corporation shall operate a taxicab without

first obtaining a license therefor from the mayor. The applicant for the license is required to execute a bond to the city of Detroit in the sum of $1,000 for each taxicab, the bond to be executed by one or more "adequate sureties  *  *  *  satisfactory to the commissioner of police." The ordinance provides the condition of the bond shall be:

"That such taxicab or motor vehicle for hire will be operated in accordance with the provisions of the laws of the State of Michigan and the charter and ordinances of the city of Detroit,  *  *  *  and that any judgment rendered in any court against such applicant arising out of damage or injury to any person or property caused by the negligent operation of such taxicab will be paid. Any person, firm or corporation who is damnified by reason of such taxicab or motor vehicle for hire being operated in violation of the provisions of such bond may, in the name of the people of the city of Detroit, institute an action upon the same to recover damages sustained by him."

Defendant's bond is conditioned in accordance with the above-noted provision of the ordinance. Unquestionably Dunbar's license expired December 31, 1924; and, as above noted, it is defendant's contention that its liability as surety on Dunbar's bond expired simultaneously with the license. As bearing upon defendant's contention, it should be observed that the ordinance does not by express terms so limit the bond, nor will such a limitation be found in the bond itself. In fact, the express condition of the bond is directly to the contrary, for it provides that if the principal on the bond operates his cab in violation of the ordinance (which he was doing by operating without a license at the time of the accident) the surety will be liable in case of injury

resulting from such operation. Further, the bond expressly provides that it shall remain in full force and effect unless "any judgment rendered in any court against the owner of such taxicab arising out of damage or injury to any person or property caused by the negligent operation of such taxicab is paid." It is fair to infer from the record that this corporation acting as a surety on this bond was so acting for hire. Bonds of sureties for hire are more strictly construed against them than are bonds against gratuitous sureties. *Rose* v. *Ramm, ante,* 259; *Grinnell Realty Co.* v. *Surety Co.,* 253 Mich. 16. If such surety intended its liability should be confined to the license period rather than to be held responsible for the damage "to any person or property caused by the negligent operation of such taxicab" (as is expressly stated in the bond) it surely should have so provided in its obligation. This could easily have been done in clear and concise language. Defendant adopted its own wording in the bond and is bound thereby. *Grinnell Realty Co.* v. *Surety Co., supra.* The defendant's obligation as a surety for hire is in the nature of insurance; "and courts in the construction of its contracts usually invoke rules applicable to insurance." *Sandusky Grain Co.* v. *Borden's Condensed Milk Co.,* 214 Mich. 306.

Further, it may well be doubted whether the municipal authorities would have accepted a bond wherein the liability was expressly limited to the exact term of the license, especially in view of the fact appearing from this record that city officials countenanced the operation of these cabs for some reasonable time after the expiration of the license for a given calendar year before requiring the taxi owner to take out a license for the subsequent year.

Dunbar's 1924 license was not issued to him until January 11, 1924; and his 1925 license was not taken out until March 6, 1925. To hold that the surety's liability is limited to the license period is to hold that sureties on bonds given by taxi owners who are thus operating in express violation of the ordinance are exempt from liability; and that the public is without the protection contemplated by the ordinance.

"There is no question as to the general rule that the language of the bond should receive that construction most reasonable to effectuate the intention of the parties, in view of all the circumstances of the case and the purpose and object of the bond." *Stratford Arms Hotel Co.* v. *General Casualty, etc., Co.,* 249 Mich. 518.

This bond was obviously required for the protection of the public. If its purpose had been to protect rights of the municipality issuing the license, there would be force and logic in limiting the life of the bond to the license period. Of such a type is the case of *Adams* v. *State,* 105 Tex. 374 (150 S. W. 591), cited by defendant. But when, as here, the bond is given to afford protection to the general public, if its terms permit, it should be so construed as to accomplish that purpose. Protection against the unlawful operation of licensed taxicabs is no more needed by the public than protection against the unlawful operation of unlicensed cabs; and this bond as drawn is broad enough to cover such cases. If the limitation contended for by defendant is even to be inferred at all, it is only from the ordinance. But the bond refers to the ordinance only by a single casual reference in its recital portion. It does not even make the provisions of the ordinance a part of the bond by express reference thereto.

At the time of the accident and injury to plaintiff, Dunbar's taxi was being operated in violation of both the ordinance and the statute. Except for such violation plaintiff would not have been damaged. It hardly seems logical to hold that because the taxicab was so operated and also operated in violation of the express conditions of the bond, the surety is discharged from liability. We think this bond cannot be so construed. If the surety proposed to thus limit its liability it should have expressly so provided in the bond. Not only is there no such limitation, but the express provisions of the bond are inconsistent therewith. A similar case passed upon in a Federal circuit court is reported in *United States* v. *Truesdell*, 2 Bond's Rep. 78 (Fed. Case No. 16,543). The syllabus reads:

"The liability of the sureties on the bond of a manufacturer of tobacco, given in pursuance of section 12 of the act of Congress of March 3, 1863, does not cease upon the expiration of his license as such manufacturer."

The following is from the body of the opinion:

"The undertaking of the sureties is, not that they are bound for the acts of the manufacturer for any specified time, or until the expiration of his license, but generally, that they will be responsible for him while he manufactures and sells tobacco subject to tax or duty, at the place designated. * * * While it is expressly the duty of the manufacturer to renew his license, and failing to do so, if he continues his business, he subjects himself to a severe penalty, I know of no principle by which it can be held that his failure to comply with the law can inure to the benefit of his sureties."

The record in the instant case justifies the following from the trial judge's opinion:

"Neither was said defendant's bond conditioned that it would terminate with the defendant's city license to operate his taxicab. Its conditions were that defendant would operate his taxicab in a lawful manner and if he failed and damage resulted therefrom defendant company undertook to respond in damages in the amount of one thousand dollars.

"In short, the function of the bond was to secure the public against unlawful operation of said taxicab, without limiting itself to any particular law or ordinance nor time when it should cease to be effective.   *   *   *

"On January 6, 1925, plaintiff did sustain damages considerably exceeding one thousand dollars, as a result of the breach of the conditions of said bond, and is entitled to recover thereon the sum of one thousand dollars with costs to be taxed."

The judgment of the lower court is affirmed, with costs to the appellee.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.