ALLEN v. AMERICAN FIDELITY & CAS-
UALTY CO.

No. 6296.

Circuit Court of Appeals, Fifth Circuit.

Dec. 15, 1931.

Rehearing Denied Jan. 9, 1932.

George C. Cochran, of Dallas, Tex., for appellant.

Will R. Harris, of Dallas, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a suit on a public liability policy issued by appellee to Wells Transfer Company as a Class B motor carrier under an act of the Legislature of the State of Texas regulat-

ing the operation of motor carriers for hire. This act (Laws Tex. 1929, c. 314 [1]) declares the term "motor carrier" denotes any person, firm, etc., operating or causing to be operated over or along the highways or streets of this state any motor-propelled vehicle for the purpose of carrying or transporting property for compensation or hire between two or more incorporated cities, towns, or villages. The act classifies motor carriers as follows: Class A, operating between two or more incorporated cities, towns, or villages over fixed routes under regular schedules, having fixed termini and receiving hire in accordance with published rates; Class B, transporting or carrying property for hire between two or more incorporated cities, etc., but without fixed routes, regular schedules, fixed termini, or published rates. Both classes of carriers are declared to be common carriers, both placed under the jurisdiction of the Railroad Commission, and both prohibited from operating between cities and towns except in accordance with the provisions of the act. Among these provisions as to Class B operators are that before operating they must apply for and receive a permit from the commission; that the permits shall not be issued until the applicant shall have in all things complied with the requirements of this act, nor shall such permit be issued unless the character of business being done or to be done by the applicant strictly conforms to the definition of a Class B motor carrier. That no application for a permit shall be considered unless, among other things, it sets forth the nature of the transportation in which the applicant wishes to engage, the territory to be covered by the operation, and shall give a description of each vehicle which the applicant intends to use. That before any permit is granted, the nature and character of the equipment to be used and the amount and character of the tonnage which may be hauled thereon shall first be fixed and approved by the commission.

Section 13 of the act provides that before any permit may be issued to a Class B operator he shall file with the commission an insurance policy in an amount to be fixed by the commission under rules and regulations prescribed by it, providing that the obligor therein will pay to the extent of the insurance all judgments which may be recovered against the motor carrier based on claims for damages from personal injuries occurring during the term of such policy, and arising out of the actual operation of such motor carrier. The act provides for the payment by the applicant at the time of the issuance of the permit to him of a special fee of $5 for every motor vehicle operated or to be operated by

[1] Vernon's Ann. Civ. 'St. Tex., art. 911b, and Vernon's Ann. P. C. Tex., art. 1690b.

208

such motor carrier thereunder. It also provides no motor carrier may operate any motor vehicle within the state unless there shall be displayed and firmly fixed upon the front and rear of said vehicle an identification plate to be furnished by the commission, each of said plates to be designed so as to identify the vehicle to which the same is attached as being a vehicle authorized to operate under the terms of the law. The plate shall bear the number given by the commission and such other marks of identification as may be necessary. The identification plate to be in addition to the regular license plate and the commission shall be authorized to collect a fee of $1 for each plate so issued. (Section 18.)

The application on which the permit was issued to W. N. Wells who applied for it in the name of Wells Transfer Company described only one truck, a Graham Dodge, and it was for this one truck that the license fee was paid and the identification plate issued. It was this same truck and no other which was described in Specification 6 of the policy.

Appellee's suit was to recover to the extent of the policy upon a judgment which he had obtained against W. N. Wells on account of injuries sustained by him as the result of a collision with a Chevrolet truck driven by Wells. Plaintiff proved that this judgment, though taken against "L. M. Wells, operating and trading as Wells Transfer & Storage Company" and rendered upon a petition and citation so describing him, was in fact based upon service actually made upon W. N. Wells at his place of business; that nothing has been paid on it; and that an execution issued on it has been returned nulla bona. In addition to offering the judgment, the application for a Class B permit, and the insurance policy, the proof that Wells had actually been served with citation in the cause, and that plaintiff had received his injuries as the result of being run over by a Chevrolet truck driven by Wells, plaintiff proved that this truck, though owned by a son of Wells, was actually being operated in the city of Dallas in the business of Wells Transfer & Storage Company under the direction of W. N. Wells. Plaintiff made no proof that at the time of the injury the Chevrolet truck was under a commission license, or that Wells had applied for a permit to obtain one, or had paid a fee on account of it, or had attached to or obtained for it the requisite identification plate. Defendant proved by Wells, and it was not disputed, that the Chevrolet truck was not at the time of the accident being, and it had not

been, used in the Class B motor business of Wells Transfer Company. It was in proof that Wells and his sons, constituting the Wells Transfer Company, had, at the time plaintiff's injuries were received, four motor vehicles in service, two, the Graham-Dodge described in the application for permit and in the policy, and a Garford truck, both licensed for and used in their business of Class B motor carriers, and two, the Chevrolet truck in question and another, licensed for and used in hauling in and around the city of Dallas, and that not for many months after the accident was this Chevrolet placed under license and its operations insured.

The policy sued on provided, in its body, that it insured against loss only the vehicles described in Statement 6, the Dodge truck, while operated for the purpose, and subject to the limitations of Statement 8, "The above described automobiles and motor vehicles are and will be used only for compensation, for transfer of merchandise purposes, and will be operated as follows: Within the State of Texas, under Permit 'B' and this insurance covers no other use or operation." By indorsement, however, its coverage was extended to "all motor vehicles belonging to or under the direction of assured, whether particularly identified in the policy or not, while same are being used in the business of carrying property for hire or compensation, and come within the terms of the statute above referred to," and it was provided, "this policy covers legal liability to the named assured from such operation of such vehicles, even though such vehicles may not be specifically identified herein." Condition N of the policy provides, "This policy is issued in consideration of the premium charged therefor, and of the statements set forth herein in the Schedule of Statements * * * the said premium is based upon the number and character of the automobiles and the uses to which the same are to be put as described in the schedule."

Planting himself upon the proposition that notwithstanding the limitation of the coverage in Statement 6 to the Graham Dodge therein described, the policy sued on was extended by the indorsement referred to to cover all motor vehicles operating under permit and license in accordance with the Motor Carrier Act, though not described in the policy, plaintiff asserted that the proof above set out established, or at least made an issue for the jury, that the truck which caused his injuries was then being operated under the direction of the assured as a Class B motortruck with-

in the meaning and under the protection of the act and the coverage clause of the policy. The trial court viewed the matter differently, and agreeing with defendant that plaintiff had made no case, upon motion instructed a verdict for defendant. We think the court was right in doing so.

Appellee is as full of reasons here why the judgment should be affirmed as an egg is of meat, and as though equally convinced of the merits of them all, it urges each of them impartially. Appellant is equally confident that not one of them is good, and anticipating each he undertakes in counter propositions to demonstrate their fallacy.

We reserve our opinion as to all of them except that proposition which concludes the case against appellant, that appellant was bound as a predicate to having his judgment enforced against appellee, to show that the Chevrolet in question was, when it caused the injury, licensed for and being operated in the motor carrier service under a Class B permit, and that he has failed to do so.

Liberal as is the construction which public liability policies of this kind should receive in favor of the public, their beneficiaries, Curtis v. Michaelson, 206 Iowa, 111, 219 N. W. 49; United States F. & G. Co. v. Allen, 158 Tenn. 504, 14 S.W.(2d) 724; Zelber v. Commonwealth, 106 N. J. Law, 611, 150 A. 243; Bess v. Commonwealth, 101 N. J. Law, 380, 128 A. 250; O'Donnell v. New Amsterdam Casualty Co., 50 R. I. 269, 146 A. 410; Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1027, 130 So. 587, it is fundamental to such liability that the claim be within the coverage provisions of the policy. Where, as here, the vehicle is not described in the policy, and the reliance for coverage is upon its general provisions that it covers all vehicles operated in accordance with the law as a Class B motor carrier, the law becomes the test of coverage. Here there is not only the positive testimony of the operator that he had no license and was not operating the truck under a permit, but his testimony is confirmed by the controlling facts that the application made under the statute did not describe the Chevrolet truck, that no license fee was paid for it, no identification plate paid for or issued to it, no amount of insurance prescribed by the commission upon it, no premium paid on account of it. Such facts not only do not establish, they defeat, plaintiff's suit to have his judgment declared a policy claim.

The judgment is without error. It is affirmed.