## TRINITY UNIVERSAL INS. CO. v. CUNNINGHAM et al.

No. 2990.

District Court, W. D. Missouri, W. D.

Nov. 9, 1938.

Trusty & Green and S. L. Trusty, all of Kansas City, Mo., for Trinity Universal Ins. Co.

Sprinkle & Knowles, by Mr. Wm. F. Knowles, of Kansas City, Mo., for Mrs. Martha E. Cunningham.

COLLET, District Judge.

This is an action under the Declaratory Judgment Act, Jud.Code § 274d, 28 U.S.C. A. § 400, by which plaintiff Trinity Universal Insurance Company, hereinafter referred to as the plaintiff, seeks to have its obligations under a liability insurance policy determined. The facts are as follows:

Plaintiff is a non-resident insurance corporation duly licensed to carry on an automobile insurance business in the State of Missouri on all material dates. All of the defendants are residents of Missouri and the amount involved, as will appear hereafter, exceeds the jurisdictional amount of $3,000.

Prior to the enactment of the Missouri Bus and Truck Law (Laws Missouri 1931 page 304, Mo.St.Ann. § 5264 et seq., p. 6679 et seq.), Kelsa Beane was engaged in the business of transporting freight for hire by motor vehicles. Upon the enactment of the Missouri Bus and Truck Law, Beane applied to the Missouri Public Service Commission for a certificate of convenience and necessity to operate motor vehicles for hire as a common carrier over an irregular route. The certificate was granted December 31, 1932. At the time of the issuance of the certificate and in order to secure its issuance Beane filed with the

Public Service Commission (which, for brevity, will be referred to hereafter as the Commission) a policy of liability insurance duly issued by the plaintiff company, by the general terms of which as found in the printed form of the policy, plaintiff insured Beane from October 15, 1932 to October 15, 1933, against loss by reason of liability imposed by law upon him for damages by reason of the ownership, maintenance and use of one truck, described as an "Indiana, 2 ton truck, motor number 6827", to be used "for commercial purposes." The following typewritten "endorsement" was attached to the policy:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby waives a description of the motor vehicles insured hereunder and agrees to pay any final judgment rendered against the Assured, for personal injuries, including death resulting therefrom, to all persons, except employees of the assured engaged in the course of their employment and/or damage to property except property owned by, leased, hired or in the custody and control of the assured caused by any and all motor vehicles operated by the assured pursuant to the certificate of convenience and necessities issued by the Public Service Commission of Missouri within the limits set forth in the schedule hereon; and further agrees that upon its failure to pay any such final judgment, such judgment creditor may maintain an action in the court of competent jurisdiction to compel such payment. *Nothing* contained in the policy or any endorsement thereon nor the violation of any of the provisions thereof by the assured shall relieve the company from liability hereunder or from the payment of all such final judgment.

"The policy to which this endorsement is attached shall not expire nor shall cancellation take effect, until after ten days notice in writing by the Company, shall have first been given to the Public Service Commission of Missouri at its office at Jefferson City, Missouri, said ten days notice to commence to run from the date it is actually received at the office of the Commission.

"It is understood and agreed by and between the Company and the Assured that the right of any person to recover hereunder shall not be effected by any act or omission of the assured or of any employee of the assured with regard to any condition or requirement of this policy but all the

terms and conditions of the Policy shall remain in full force and be binding as between the Company and the assured; and the Company shall be reimbursed by the Assured for any and all loss, cost or expenses paid or incurred by the Company which company would not be obliged to pay under the provisions of the policy independently of this endorsement.

"It is understood and agreed by and between the Company and the assured that for the purpose of computing a premium for this policy the Assured shall at the inception date thereof furnish the company with a list of the motor vehicles and trailers owned by him on such date and shall submit to the Home Office of the company at the end of each month, a report of all motor vehicles and/or trailers added to or subtracted from said list, including hired motor vehicles and/or trailers. The Company shall, upon submission of such monthly report, adjust the premium by making pro rata charges for the remainder of the policy period for each motor vehicle and/or trailers disposed of; such adjustment of premium to be based on the rates in force when this policy took effect, as indicated by the Company's manual of rules and rates. If the premium for added motor vehicles and/or trailers is greater than the return premium for disposed motor vehicles and/or trailers, the assured shall immediately pay the difference to the company; if less, the Company shall return the difference to the assured. But in any event, the Company shall retain the full annual premium for one of the highest rated motor vehicles covered by the policy as the minimum annual premium for the policy.

"It is further understood and agreed that the company, or any of its duly authorized agents shall be permitted at any reasonable time during the life of this insurance, or within two years after the expiration thereof, to audit and examine any and all of the assureds records for the purpose of ascertaining the premium for this policy."

This endorsement was required by the Commission (under authority of Sec. 5273, Laws Mo.1931, p. 313, Mo.St.Ann. § 5273, p. 6691).

A written application was made by Beane to the Commission for the issuance of the certificate of convenience and necessity. In that application he was required to give the description of the vehicles he proposed to operate under the requested certificate. The Indiana 2 ton truck, re-

ferred to above, was the only vehicle described in the application.

The material part of the certificate of convenience and necessity issued by the Commission was as follows:

"Ordered: 1. That certificate of Convenience and Necessity No. T-1442 be and the same is hereby issued to Kelse Beane of Martin City, Missouri, for authority to operate as a freight-carrying motor carrier over an irregular route as follows: Trade territory contiguous to Martin City, and from this territory to all points in Missouri, and from all points in Missouri to this territory; subject to the limitations contained in the Missouri Bus and Truck Law of 1931 concerning the operation of a motor truck as a common carrier for hire over an irregular route. The territory above described to be served with the motor vehicles having the motor numbers and weight carrying capacities more particularly described in the application and transcript of the testimony herein filed, and with such other or additional motor vehicles as subsequently may be approved by this Commission.

"Ordered: 2. That the holder of this certificate shall file with this Commission in the form prescribed in Commission's General Order No. 27, a schedule of rates as set forth in the application and hearing to become effective on not less than one day's notice and not later than the effective date of this order.

"Ordered: 3. That this order shall take effect ten days from this date and that the Secretary of this Commission shall forthwith serve certified copy of same upon all interested parties."

At the time of the application for and the issuance of the certificate, Mr. Beane was also operating another Indiana Truck of smaller capacity which was not mentioned in the proper place in his application but which was listed with the 2 ton truck in his schedule of assets which formed a part of the application. The 1½ ton truck was not described in the policy nor were any annual fees paid on it. Mr. Beane testified that he thought it necessary to only license one truck.

On March 27, 1933, Mr. Beane's annual license fees for the year 1933 not having been paid, his certificate of convenience and necessity, together with a large number of those of other carriers in a like situation, was suspended by the Commission until the 1933 fees were paid.

On April 20, 1933, plaintiff served a notice of cancellation of the policy on Beane and the Commission. The notice stated the cancellation was to be effective on May 1, 1933. The Commission cancelled the policy on its records May 1, 1933.

The annual license fees were not paid and on May 3, 1933, Beane and others were cited to appear on May 16, 1933, and show cause why their certificate should not be revoked. On June 13, 1933, a large number of certificates, including Mr. Beane's, were revoked for failure to pay the 1933 annual license fee.

On April 30, 1933, an employee of Mr. Beane's, while acting for him and engaged in the same business described in the certificate of convenience and necessity, to-wit, that of a motor carrier of property for hire, and while operating the smaller truck which was not described in the insurance policy, collided with an automobile occupied by Robert L. Hedrick, Charles L. Rowland, Martha Naomi Cunningham, Laura N. Rowland, Reva R. Cunningham and Jack Cunningham. The collision occurred on a public highway in Jackson County, Missouri. The occupants of the automobile were injured. Robert L. Hedrick thereafter died. The executrix of Hedrick's estate and all of the other injured parties above named have actions pending for the recovery of damages from Beane. All, including Beane, are made defendants in the present action.

The accident was immediately reported to the plaintiff. The following day, May 1, the driver of the truck made a written statement to the plaintiff's representatives in which the truck was referred to as "An Indiana 1½ ton truck." Representatives of the plaintiff made an investigation of the facts relative to the accident during the period from May 1, 1933, to May 12, 1933, interviewed witnesses, examined the truck involved in the accident, and on the latter date submitted to the Company at its office a typewritten report of the accident signed by Kelsa Beane, the statement of the driver above referred to, and a notice of attorneys' lien served on Beane. In Beane's report of the accident, above referred to, which was dated May 11, 1933, both trucks were referred to, one as a 1928 Indiana 1½ ton and the other as a 1929 Indiana 2 ton truck. This report stated that the 1928 1½ ton truck was involved in the accident and that the 2 ton truck was at home at the time.

On May 12, 1933, a representative of the plaintiff, in the name of the plaintiff, advised Beane in writing that the policy did not cover the operation of the truck involved in the accident and that for this reason the plaintiff was under no legal liability. This notice stated that the plaintiff was willing to complete the investigation, appear for Beane at the Coroner's inquest and to furnish assistance in defending the claims of the injured parties, but that in doing so it was not waiving its legal rights or conceding that the policy covered the accident. No notice was given the other defendants that the plaintiff was denying liability until June 13, 1938, when this action was filed.

Thereafter, the plaintiff carried out this offer, its own legal counsel joining with Mr. Beane's personal attorney in the defense of the personal injury actions which were instituted in the State Court by the Administratrix of Robert L. Hedrick and the other injured parties in April, 1934. One of these actions was tried in the Circuit Court of Jackson County, Missouri, in June, 1938, resulting in a judgment against Beane for $6,000 and in favor of the Executrix of Hedrick's estate.

The present action was filed in this court June 13, 1938, the day on which the Hedrick case was set for trial. A restraining order was granted but was within a few hours so modified as to permit the trial of the Hedrick case to proceed on the same day.

All of the defendants except Kelsa Beane filed a motion to dismiss predicated upon the ground that the facts stated in the bill did not entitle plaintiff to the relief sought, i. e., a declaration of nonliability.

Answer was filed by all defendants except Beane, in which they again asserted that the facts stated in the bill did not warrant the relief sought. Other legal defenses were raised by the answer. These will appear hereafter. The only disputed issue of fact was the identity of the truck involved in the accident, plaintiff contending that the 1½ ton truck which was not described in the policy was the truck involved, while defendants vigorously asserted that the 2 ton truck which was so described was the one involved. While there is some doubt in my mind on this question, yet I am convinced that it was the smaller truck as stated in the foregoing findings.

The defendant Beane made no defense to this action.

Briefly stated, the questions of law presented are as follows:

First. It is the contention of *plaintiff* that the defendants other than Kelsa Beane are bound by their co-defendant Beane's testimony to the effect that the 1½ ton truck was the one involved.

Second. *Plaintiff* insists that since the insurance policy covers injuries or death "caused by any and all motor vehicles operated by the assured *pursuant to the certificate of convenience and necessity*" and since the certificate was under suspension at the time of the accident, the operation could not have been pursuant to the certificate with the result that plaintiff is not liable for defendants' injuries regardless of which truck caused the injuries.

Third. The *plaintiff* contends that since the defendants' injuries were caused by the 1½ ton truck and since that truck was not described in the policy, defendants' claims for injuries are not covered by the policy.

Fourth. *Plaintiff* asserts that inasmuch as Beane's operations after suspension of his certificate were unlawful, any contracts relative to such operations, including the policy of insurance, were void.

Fifth. *Defendants* (other than Beane) in addition to challenging the plaintiff's position on each of the above stated questions, contend that the policy covered all injuries caused by any truck operated by defendant Beane in the character of business included in the scope of the authority conferred by the certificate until the policy was cancelled after ten days' notice to the Commission (which was on May 1, 1933, subsequent to the accident).

Sixth. *Defendants* (other than Beane) contend that the plaintiff waived the defense that the policy did not cover the 1½ ton truck.

The general importance of the questions raised merits a statement of the reasoning upon which the answers to those questions are based.

The first question becomes unimportant in view of the finding of fact that the 1½ ton truck was the one involved in the accident.

The plaintiff is clearly wrong on the second proposition. The error arises from an erroneous meaning placed upon that part of the endorsement reading as follows: "* * * the Company hereby * * * agrees to pay any final judgment rendered against the assured, for personal injuries,

including death resulting therefrom, * * * by any and all motor vehicles operated by the assured *pursuant to the certificate of convenience and necessity* issued by the Public Service Commission * * *".

Apparently the meaning which plaintiff places upon the italicized words—"pursuant to the certificate of convenience and necessity"—is that a truck to be covered by the terms of the endorsement attached to the policy must be *lawfully* operated pursuant to the certificate. That position is clearly stated in the following language of plaintiff's brief:

"Now it is admitted that the truck involved was engaged in common carrier service within the definition of the law and the rules of the Commission.

"Now when a truck that is insured is actually engaged in 'Common Carrier service' the terms of the statutory endorsement limit the insurance company's liability to operations 'pursuant to the certificate', and unlawful operations in common carrier service would not be within the meaning of such endorsement. Beane could not operate in common carrier service for one purpose under a suspended certificate unless he could operate in such service lawfully for all purposes, including emergency and substituted trucks. If the suspension took away any power it took away all power."

Although in its reply brief plaintiff states that by "unlawful operations" it means operations under a suspended certificate, nevertheless since the unlawfulness of operations (in a general sense) are relied upon as a basis for Point 4, the effect of such operations on the enforcibility of the provisions of the endorsement should be considered.

The words "pursuant to the certificate" do not mean "for the purposes contemplated in the certificate and in accordance with all laws and rules relative thereto" but simply mean "for the purposes contemplated in the certificate." Protection of the public from the unlawful operations of trucks engaged in the business of a common carrier was exactly what policies like this were required for and intended to cover. To illustrate: The general law applicable to the operation of all motor vehicles in Missouri requires that they be operated in a careful and prudent manner, the operator exercising the highest degree of care, etc. (Sec. 7775, R.S.Mo.1929, Mo.St.Ann. § 7775, p.

5197). Generally, if not universally, the operator could not have a "final judgment rendered against him" for a tort committed unless there had been a failure on his part to obey the law and operate his vehicle carefully, or, otherwise stated, unless he had operated unlawfully. Yet, if plaintiff's theory be correct, when the operator drove his vehicle carelessly he would be operating unlawfully and hence the insurance policy would not apply, with the result that these policies would never apply to any situation which they were really intended by the Commission and the Legislature to cover.

. Plaintiff argues that by the inclusion of the words "subject to the limitations contained in the Motor Bus and Truck Law of 1931 concerning the operation of a motor truck as a common carrier for hire over an irregular route", in the certificate, its issuance was upon the condition that it should be subject to suspension by the Commission and when suspended Beane's operations thereafter were in the same category as if the certificate had never been issued. The quoted language does not mean what plaintiff construes it to mean. Reference to the certificate discloses that Beane's certificate authorized him to operate as a common carrier "over an irregular route." The limitation referred to was the limitation placed upon irregular route operators by subsections (d) and (e) of Sec. 5267, Laws Missouri 1931, page 307, Mo.St.Ann. § 5267 (d, e), p. 6683. No further proof of that fact is necessary than the fact that the "regular route" common carrier certificates did not, at the time of the issuance of Beane's certificate, or at any time since, contain that limitation.

The suspension of the certificate was for the purpose of enforcing the payment of the annual fees. The suspension order specifically stated that the certificates were suspended "until the license fees * * * be paid and until the further order of the Commission." True, any operation by Beane during the period of the suspension would be unlawful but it was never intended that the lawfulness of the operation should determine the applicability of the insurance. Further proof of the correctness of the foregoing statement lies in the fact that the weight and size of motor vehicles operating on the highways is restricted by law (Sec. 7787, R.S.Mo.1929, as amended Laws Mo.1931, page 265, and section 7788, R.S.Mo.1929, Mo.St.Ann. §§ 7787,

7788, pp. 5242, 5243). Would Beane's insurance policy be inapplicable to an accident merely because it was overloaded? Further illustrated: The annual license fee is based upon the actual weight carrying capacity of a truck and not the manufacturer's rated capacity. Would the fact that Beane may have been paying fees for the operations of a 2 ton truck when the actual capacity of the truck was 4 tons make the policy inapplicable? The answer is obvious, yet it would be no more unlawful in principle to pay only part of the fee due than to pay none. The lawfulness of the operation is not determined by suspension or non-suspension of the certificate. The suspension was only for the purpose of compelling a compliance with the law, and had no connection with the object or purpose of the insurance—the protection of the public.

■ The third proposition advanced by plaintiff is also untenable. There cannot be the slightest doubt that the State Legislature in enacting Section 5273, supra (Laws Mo.1931, page 313, Mo.St.Ann. § 5273, p. 6691), and the Commission in formulating that part of the endorsement here involved, had in mind the sole purpose of providing a means by which a person injured by the negligent operation of a truck used in transporting persons or property for hire over the highways of the state, might recover for those injuries, regardless of whether fees were paid for its operation or whether it was described in the policy. The endorsement on the Beane policy was identical in haec verba with the form prescribed in Rule 11 of the Commission's General Order No. 27 (by agreement considered in evidence). It provides that the policy shall bind the insurer to pay losses caused by *any and all* vehicles operated by the assured in the business authorized by the certificate and by the endorsement the plaintiff "hereby waives a description of the motor vehicles insured hereunder."

Plaintiff cannot contend that the premium was based on the operation of the 2 ton truck alone because by the terms of the endorsement the premium was to be "adjusted" according to the actual number of trucks operated with the right reserved to plaintiff to inspect Beane's records for the purpose of determining the proper premium.

The reason for the provision in the endorsement relative to adjustment of premium according to actual number of vehicles operated is apparent upon reference to the provisions of Sec. 5272, Laws Mo.

1931, page 312, Mo.St.Ann. § 5272, p. 6689, and Rule 14 of the Commission's General Order No. 27. The statute (Sec. 5272) contemplates operation of "additional" vehicles "in case of emergency or usual temporary demand." Rule 14 requires that the use of "extra" equipment be reported to the Commission "on the date of use." Obviously, the description of extra vehicles could not be carried on the policy yet it was necessary that their operations be insured, therefore, by the endorsement the Commission effectuated this coverage regardless of the fact the vehicle was not described in the policy and at the same time provided for the collection of a premium on their operation. A failure on the part of the Operator through oversight or design to report the use of additional equipment did not prevent the endorsement from covering its operation. The endorsement covered the use of all vehicles whether described in the policy or not and did not give to the carrier the power to nullify the statute requiring insurance by failing to list vehicles used, to report their operation, or pay fees therefor.

■ The fourth point advanced by plaintiff is based upon the general rule that a contract made for the furtherance of, or in connection with, an immoral or unlawful act is void because against public policy. It is argued that this contract of insurance was void after the suspension of the certificate because then Beane's operations became unlawful and the continued vitality of the policy would promote or further the commission of an unlawful act.

The principal reason that theory does not apply to the facts of this case is that the public policy in Missouri is definitely established to the effect that common carriers by motor vehicles shall have liability insurance and hence the public policy of the state may not be relied upon as ground for abrogating such insurance.

As pointed out in considering point 2, the life and enforcibility of the policy is not controlled by the lawfulness or unlawfulness of the operation.

Consideration has been given the authorities cited by plaintiff in support of its various contentions. They are distinguishable on the facts. In the case of Allen v. American Fidelity & Casualty Co., 5 Cir., 54 F. 2d 207, the truck involved in the accident was not being operated in the kind of business covered by the Texas statute or the endorsement attached to the policy. Rainer v. Western Union Telegraph Co., Spring-

808

field Court of Appeals, 91 S.W.2d 202, involved the enforcibility of a contract between a truck operator and defendant which was made in connection with the commission by plaintiff of the unlawful act of operating as a common carrier without a permit. It was ruled that public policy prevented the enforcement by plaintiff of an agreement made in connection with the carrying out of an unlawful act. In Frohoff v. Casualty Reciprocal Exchange, St. Louis Court of Appeals, 113 S.W.2d 1026, 1027, no certificate had been issued and it does not appear that the vehicle was being operated in the character of service intended to be covered by the statute or the endorsement.

■ Defendants' position stated above as point 5 is well taken. When the various applicable statutes and Commission rules are considered in connection with the proper construction to be placed on the endorsement, there can be no doubt that the policy covered the 1½ ton truck and that the policy was in force until cancelled subsequent to the accident.

■ The sixth point, advanced by defendants, is not supported by the evidence. Plaintiff's acts do not amount to a waiver of the defense that the 1½ ton truck was the vehicle involved in the accident.

The observations concerning the legal questions involved have been lengthy. Some atonement may be made by tersely stating the formal conclusions of law.

■ 1. The right of defendants, other than Beane, to a recovery on the policy is not dependent on Beane's right to a recovery thereon.

■ 2. Defendants, other than Beane, are not bound by Beane's testimony to the effect that the 1½ ton truck was the truck involved in the accident.

3. The suspension of Beane's certificate of convenience and necessity by the Public Service Commission for non-payment of annual license fees did not suspend the insurance policy.

4. The endorsement attached to the policy covered the operation of the 1½ ton truck although that truck was not described in the policy.

5. By the terms of the endorsement the policy was to remain in effect until cancelled, or operations as a "motor carrier" ceased or the certificate was revoked.

6. The insurance policy was in force at the time of the accident, covered the accident, and plaintiff is obligated by the policy to pay any and all final judgments against Beane for injuries received in the accident not to exceed $5,000 to any one person and $3,500 to all persons injured in this accident.

7. The restraining order heretofore issued should be dissolved.

8. Plaintiff is not precluded by estoppel or waiver from asserting that the 1½ ton truck was the truck involved in the accident.

Judgment will be entered in conformity with the findings and conclusions stated. Counsel may prepare formal judgment to be submitted to the Court for approval.