[No. 27214. *En Banc.* January 7, 1939.]

L. R. Sills *et al., Respondents,* v. Ernest Schneider, Jr., *et al., Defendants,* Maryland Casualty Company, *Appellant.*

Wayne Smith *et al., Respondents,* v. Ernest Schneider, Jr., *et al., Defendants,* Maryland Casualty Company, *Appellant.*[1]

*O. R. Schumann* and *Homer B. Splawn,* for appellant.

*D. V. Morthland* and *Lane Morthland,* for respondents.

Blake, J.—These actions arise out of a collision between an automobile in which plaintiffs were riding and a taxicab owned by defendant Schneider and driven by defendant Schaefer. The Maryland Casualty Company, having, pursuant to Rem. Rev. Stat., Vol. 7A,

[1]Reported in 86 P. (2d) 203.

§ 6383 [P. C. § 236], issued a public liability insurance policy upon the taxicab, was made a party defendant. Rem. Rev. Stat., Vol. 7A, § 6384 [P. C. § 237].

The cause was tried to the court, which found that the collision was due to negligence on the part of the driver of the taxicab. Judgments were entered against all of the defendants. The Maryland Casualty Company appeals.

The only question raised on the appeal is whether the policy of liability insurance was in force at the time of the collision, which occurred May 9, 1937. It is the contention of appellant that the policy had been effectively canceled prior to that date. Whether liability on the policy had been terminated prior to the collision, depends upon the construction of an endorsement attached to the policy, the material part of which reads as follows:

"The policy to which this endorsement is attached shall not expire nor shall cancellation take effect until after ten (10) days' notice in writing by the company shall have first been given to the director of licenses at his office in Olympia, Washington, said notice to run from the date actually received *and until the assured has actually ceased to do business under the permit or has deposited with the director of licenses at Olympia, Washington, another insurance policy or bond satisfactory to the director in lieu hereof.*"

March 13, 1937, the general agent of appellant addressed the following communication to the director of licenses:

"We are today serving cancellation notice upon the above named assured, giving him ten days' notice of our company's desire to cancel the policy.

"Will you please acknowledge receipt, specifying the date on which our company will be relieved of liability under this policy."

On the same day, appellant addressed to Schneider the following notice:

"You are notified that your Automobile Policy No. 15-509314, dated February 25, 1937, Renewal No.......
dated............ is hereby cancelled as of Midnight, the 23rd day of March, 1937, from and after which day and hour the Policy will be no longer in force."

On March 16th, the director wrote appellant's general agent as follows:

"RE:   Cancellation of Jitney
        Bonds.   File 2631
"Your letter dated March 15, requesting cancellation on March 15 of Policy No. 15-509314 issued by Maryland Casualty Company to Ernest Schneider, Jr., et al of Yakima covering a Pontiac car with Motor No. 6-226740 on which For Hire Permit No. 7818 was issued, has been received and has been filed with Policy for record."

On March 17th, the director wrote the following letter to Schneider:

"RE:   Notice of Cancellation
        For Hire Permit.   File 2631
"Ernest Schneider
"1102 Brown Avenue
"Yakima, Washington
"We have just received a notice of cancellation of policy No. 15-509314 issued to you by Maryland Casualty Company on a Pontiac car with Motor No. 6-226740 on which for hire permit No. 7818 was issued, and providing indemnity for personal injury or property damage as required by chapter 57, Laws of 1915, as amended by chapter 73, Laws of 1933.

"You cannot legally operate a motor vehicle for the purpose of transporting passengers for hire in a city of the first class without having either a bond or insurance policy on file with the director of licenses, as required by law.   Therefore, you must arrange to file another bond or policy immediately.   When new bond or policy is filed and accepted, a substitute permit will be issued without additional filing fee."

■ Although Schneider's permit was never taken up, it must be conceded that, at the time of the collision, he was operating the taxicab unlawfully. For he had never filed another bond, as required by the director. Appellant insists that it must follow, as a matter of course, that liability under the policy terminated when Schneider ceased to operate lawfully. Whether this contention can be sustained, depends upon the construction to be placed upon the above quoted endorsement, attached to the policy, relating to cancellation. Reverting to the endorsement, we find that the policy continues in effect

". . . until after ten (10) days' notice . . . to the director of licenses . . . *and until the assured has actually ceased to do business under the permit* or has deposited with the director of licenses . . . another insurance policy."

Appellant argues that, although Schneider continued to operate the taxicab, he of necessity "ceased to do business under the permit," because he was operating unlawfully. We think, however, that, in making this contention, appellant unduly emphasizes the words "under the permit," and minimizes the significance of the clause in its entirety. It seems to us that the clause under consideration, when read in connection with the succeeding one, clearly contemplates that the assured shall at all times have on file an insurance policy. This construction of the endorsement is in keeping with the intent and purpose of the statute (Rem. Rev. Stat., Vol. 7A, § 6383) requiring the filing of a bond or insurance policy with the director of licenses. Obviously, the purpose of the act is to protect the public against the reckless operation of for hire vehicles by financially irresponsible owners. As was observed by the supreme court of Michigan, in a case where the facts were closely analogous to the facts in the instant case:

"But when, as here, the bond is given to afford protection to the general public, if its terms permit, it should be so construed as to accomplish that purpose. Protection against the unlawful operation of licensed taxicabs is no more needed by the public than protection against the unlawful operation of unlicensed cabs." *Detroit v. Blue Ribbon Auto Drivers' Ass'n,* 254 Mich. 263, 237 N. W. 61, 74 A. L. R. 1306.

So, in this case, we think that the clause of the endorsement which we are discussing is broad enough to afford protection to respondents. It is our view that liability on the policy continues until the assured either has filed a new policy or has actually ceased to operate the vehicle—regardless of the cancellation of the permit.

Indeed, we think we are committed to this view by the case of *Slotemaker v. International Fruit & Produce Co.,* 156 Wash. 574, 287 Pac. 883. That was an action on a commission merchant's bond, executed pursuant to Laws of 1925, Ex. Ses., chapter 194, p. 586, § 2. The surety, desiring to be relieved of liability on the bond, took identical steps to effect cancellation as did the appellant in this case. And the department of agriculture advised the principal that its bond had been canceled and demanded that it furnish a new bond or cease doing business. The principal, however, continued to do business, but failed to file another bond. Subsequently, the plaintiff delivered produce on consignment to the principal, which it sold, but failed to account for the proceeds. The consignor brought suit against the principal and surety. In that case, as in this, the surety argued that, when it notified the department of cancellation of the bond, it had done all that it could do; that, the department having acted on the notification, the responsibility for seeing to it that the principal furnish a new bond or cease doing business rested upon the department, and not upon the surety. The

court, however, held the bond to be a continuing guaranty, saying:

"Immediately upon the expiration of the thirty days given by the department of agriculture to the commission merchant to procure a new bond in order to keep its license in force, upon failure so to do, appellant could have brought an action to enjoin the commission merchant from continuing in business under its bond, which it did not do. During that time, its principal continued in business with an outstanding license so to do and incurred liability to third parties. Until the license was revoked and the *bond released,* third parties doing business with the commission merchant, at least until the end of that calendar year, under the statute, were entitled to statutory relief." (Italics ours.)

It may be suggested that the court in that case stressed the fact that the license was outstanding and unrevoked. While in this respect, the facts in this case are identical with those in the case cited, we have not emphasized them, because, as we have said, under the express terms of the endorsement, liability under the policy continues until the assured has actually ceased operating the vehicle, or filed a new bond.

Judgment affirmed.

ALL CONCUR.