TRINITY UNIVERSAL INS. CO. v.
CUNNINGHAM et al.

No. 11448.

Circuit Court of Appeals, Eighth Circuit.

Dec. 6, 1939.

Rehearing Denied Dec. 27, 1939.

S. M. Mandell, of Kansas City, Mo., and Hobert Price, of Dallas, Tex. (S. L. Trusty, of Kansas City, Mo., on the brief), for appellant.

William F. Knowles, of Kansas City, Mo. (Sprinkle & Knowles, George Aylward, and Mont T. Prewitt, all of Kansas City, Mo., on the brief), for appellees.

Before THOMAS and VAN VALKENBURGH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Appellant, questioning its liability on an indemnity insurance policy, sought relief in an action against parties claiming a beneficial interest therein and the assured for a declaratory judgment.

There was no dispute as to the facts and the parties agree that the findings made by the trial court constitute a true and correct statement. In so far as they bear upon the questions of law raised in this appeal, they are as follows, 25 F.Supp. 801, 802:

" * * * Prior to the enactment of the Missouri Bus and Truck Law (Laws of Missouri 1931 page 304, Mo.St.Ann. § 5264 et seq., p. 6679 et seq.), Kelsa Beane was engaged in the business of transporting freight for hire by motor vehicles. Upon the enactment of the Missouri Bus and Truck Law, Beane applied to the Missouri Public Service Commission for a certificate of convenience and necessity to operate motor vehicles for hire as a common carrier over an irregular route. The certificate was granted December 31, 1932. At the time of the issuance of the certificate and in order to secure its issuance Beane filed with the Public Service Commission (which, for brevity, will be referred to hereafter as the Commission) a policy of liability insurance duly issued by the plaintiff company, by the general terms of which as found in the printed form of the policy, plaintiff insured Beane from October 15, 1932 to October 15, 1933, against loss by reason of liability imposed by law upon him for damages by reason of the ownership, maintenance and use of one truck, described as an 'Indiana, 2 ton truck, motor number 6827,' to be used 'for commercial purposes.' * * *

"A written application was made by Beane to the Commission for the issuance of the certificate of convenience and necessity. In that application he was required to give the description of the vehicles he proposed to operate under the requested certificate. The Indiana 2 ton truck, referred to above, was the only vehicle described in the application.

"The material part of the certificate of convenience and necessity issued by the Commission was as follows:

" 'Ordered: 1. That certificate of Convenience and Necessity No. T-1442 be and the same is hereby issued to Kelsa Beane of Martin City, Missouri, for authority to operate as a freight-carrying motor carrier over an irregular route as follows: Trade territory contiguous to Martin City, and from this territory to all points in Missouri, and from all points in Missouri to this territory; subject to the limitations contained in the Missouri Bus and Truck Law of 1931 concerning the operation of a motor truck as a common carrier for hire over an irregular route. The territory above described to be served with the motor vehicles having the motor numbers and weight carrying capacities more particularly described in the application and transcript of the testimony herein filed, and with such other or additional motor vehicles as subsequently may be approved by this Commission. * * *'

"At the time of the application for and the issuance of the certificate, Mr. Beane was also operating another Indiana Truck of smaller capacity which was not mentioned in the proper place in his application but which was listed with the 2 ton truck in his schedule of assets which formed a part of the application. The 1½ ton truck was not described in the policy nor were any annual fees paid on it. Mr. Beane testified that he thought it necessary to only license one truck.

"On March 27, 1933, Mr. Beane's annual license fees for the year 1933 not having been paid, his certificate of convenience and necessity, together with a large number of those of other carriers in a like situation, was suspended by the Commission until the 1933 fees were paid.

"On April 20, 1933, plaintiff served a notice of cancellation of the policy on Beane and the Commission. The notice stated the cancellation was to be effective on May 1, 1933. The Commission can-

celled the policy on its records May 1, 1933.

"The annual license fees were not paid and on May 3, 1933, Beane and others were cited to appear on May 16, 1933, and show cause why their certificate should not be revoked. On June 13, 1933, a large number of certificates, including Mr. Beane's, were revoked for failure to pay the 1933 annual license fee.

"On April 30, 1933, an employee of Mr. Beane's, while acting for him and engaged in the same business described in the certificate of convenience and necessity, to-wit, that of a motor carrier of property for hire, and while operating the smaller truck which was not described in the insurance policy, collided with an automobile occupied by Robert L. Hedrick, Charles L. Rowland, Martha Naomi Cunningham, Laura N. Rowland, Reva R. Cunningham and Jack Cunningham. The collision occurred on a public highway in Jackson County, Missouri. The occupants of the automobile were injured. Robert L. Hedrick thereafter died. The executrix of Hedrick's estate and all of the other injured parties above named have actions pending for the recovery of damages from Beane. All, including Beane, are made defendants in the present action."

The trial court resolved the case in favor of the defendants, and in the judgment declared that the policy of insurance was in full force and effect on the 30th day of April, 1933; that plaintiff is under the duty to defend the actions now pending in the Circuit Court of Jackson County, Missouri, against Kelsa Beane, and that the plaintiff is liable to the defendants under said policy of insurance to the extent and limit of said insurance contract.

Appellant relies for a reversal upon four assignments of error duly raised and denied by the trial court:

1st. The court erred in refusing requested conclusion of law, No. 4, as follows: "Suspend means to put a temporary stop to a right or a temporary cutting off or disbarring of one from its privileges, and so no operations of Kelsa Beane as a motor carrier for hire over the highways of Missouri on April 30th, 1933, were pursuant to his Certificate of Convenience and Necessity while it was under suspension."

2nd. The court erred in refusing conclusion of law, No. 5, as follows: "The Plaintiff did not waive the description of any motor vehicles operated by Kelsa Beane as a motor carrier for hire over the highways of Missouri unless such operations were pursuant to his Certificate of Convenience and Necessity, and so, Plaintiff did not waive description of the 1928 Indiana one and one-half ton truck involved in the accident, and operated while his certificate was suspended."

3d. The court erred in refusing conclusion of law, No. 9, as follows: "Since Kelsa Beane was operating as a motor carrier for hire over the highways of Missouri illegally on April 30, 1933, while his certificate of Convenience and Necessity was suspended, any contract of insurance made by him in connection with such operation or relating to such operation while under suspension was void as against public policy and neither Kelsa Beane nor any of the other defendants herein can enforce any right growing out of any such contract.

4th. The court erred in not giving plaintiff's requested conclusion of law, No. 13, as follows: "Judgment should be for the plaintiff."

It is apparent that the last assignment of error is dependent upon whether other assignments are sustained.

The first two will be considered together as they have to do with the coverage of the policy of insurance.

At the time of the collision the insured, Kelsa Beane, was operating a motor vehicle as a common carrier of goods within the territory authorized by the certificate of convenience and necessity, but in a motor vehicle not approved by the Commission, and during a time when the certificate of convenience and necessity was suspended by the Commission for failure of the insured to pay his annual license fee. Whether such a vehicle so operated was within the coverage of the insurance policy is to be determined by an interpretation of an endorsement certificate or rider attached to the policy and which was required by, and so attached in accordance with, a rule of the Commission. That certificate reads as follows:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby waives a description of the motor vehicles insured hereunder and agrees to pay any final judgment rendered against the Assured, for personal injuries, * * * to all persons * * * caused by any and all motor vehi-

cles operated by the assured pursuant to the certificate of convenience and necessities issued by the Public Service Commission of Missouri within the limits set forth in the schedule hereon; * * *. Nothing contained in the policy or any endorsement thereon nor the violation of any of the provisions thereof by the assured shall relieve the company from liability hereunder or from the payment of all such final judgment.

"The policy to which this endorsement is attached shall not expire nor shall cancellation take effect, until after ten days notice in writing by the Company, shall have first been given to the Public Service Commission of Missouri at its office at Jefferson City, Missouri, said ten days notice to commence to run from the date it is actually received at the office of the Commission.

"It is understood and agreed by and between the Company and the Assured that the right of any person to recover hereunder shall not be affected by any act or omission of the assured or of any employee of the assured with regard to any condition or requirement of this policy but all the terms and conditions of the Policy shall remain in full force and be binding as between the Company and the assured; and the Company shall be reimbursed by the Assured for any and all loss, cost or expenses paid or incurred by the Company which company would not be obliged to pay under the provisions of the policy independently of this endorsement.

"It is understood and agreed by and between the Company and the assured that for the purpose of computing a premium for this policy the Assured shall at the inception date thereof furnish the company with a list of the motor vehicles and trailers owned by him on such date, and shall submit to the Home Office of the company at the end of each month, a report of all motor vehicles and/or trailers added to or subtracted from said list, including hired motor vehicles and/or trailers. The Company shall, upon submission of such monthly report, adjust the premium by making pro rata charges for the remainder of the policy period for each motor vehicle and/or trailers disposed of; such adjustment of premium to be based on the rates in force when this policy took effect, as indicated by the company's manual of rules and rates. If the premium for added motor vehicles and/or trailers is greater than the return premium for disposed motor vehicles and/or trailers, the assured shall immediately pay the difference to the company; if less, the Company shall return the difference to the Assured. But in any event, the Company shall retain the full annual premium for one of the highest rated motor vehicles covered by the policy as the minimum annual premium for the policy. * * *"

■ The legislature of Missouri in the enactment of its Missouri motor vehicle law provided among other things as follows: "It is hereby declared that the legislation herein contained is enacted for the sole purpose of promoting and conserving the interest and convenience of the public * * *." Mo.St.Ann. § 5280, p. 6695. And the Supreme Court of Missouri has recognized the general rule that public service commission laws are remedial statutes and are to be liberally construed in favor of the public. State ex rel. Laundry, Inc. v. Public Service Comm., et al., 327 Mo. 93, 34 S.W.2d 37, loc. cit. 42; Wellston Trust Co. v. American Surety Co., 224 Mo.App. 241, 14 S.W.2d 23; Allen v. American Fidelity & Casualty Co., 5 Cir., 54 F.2d 207.

■ It is a general rule of law that an insurance policy must be interpreted to give effect to the intention of the parties so far as such intention can be discovered from the language of the policy and where the meaning of an insurance policy is fairly susceptible of two constructions, it should be construed most strongly in favor of the policy holder. Jaloff v. United Auto Indemnity Exchange, 120 Or. 381, 250 P. 717; Whitlock v. United States Inter-Insurance Ass'n, 138 Or. 383, 6 P.2d 1088.

Broadly the above certificate or rider provides that the insurer will pay any final judgment for personal injuries to all persons caused by any motor vehicle operated by the assured; that the policy shall not expire (end) until cancellation after notice; that the rights of any person to recover as between the company and third persons shall not be affected by any act or failure to act on the part of the assured; and that the premium rate shall be subject to the number of motor vehicles owned by the assured to be adjusted monthly.

The Commission having in mind, no doubt, the protection of the public provided for and required the clause to the effect that the coverage of the policy should continue in favor of the public no matter what the assured or his agent did or failed

to do until the policy was cancelled, which could only be done after notice.

■ We are satisfied the provisions of the policy covered liability during a period of suspension of the certificate of convenience and necessity, and until it was finally cancelled. City of Detroit v. Drivers' Ass'n, 254 Mich. 263, 237 N.W. 61, 74 A.L.R. 1306; Sills v. Schneider, 197 Wash. 659, 86 P.2d 203; Sandolovich v. United States Fidelity & Guaranty Co., 142 Misc. 463, 254 N.Y.S. 563.

■ The company also waived the description of any particular motor vehicle and agreed to pay all damages arising from the use of any motor vehicle while operating pursuant to the certificate of convenience and necessity.

Appellant contends that the phrase "pursuant to the certificate of convenience and necessity" means, in effect, "in accordance with," and "as limited by any and all provisions contained in the certificate of convenience and necessity." If there were such a limitation there would be no coverage of the motor vehicle that was being operated by the insured at the time of the collision, as it had not been approved by the Commission. Allen v. American Fidelity & Casualty Co., supra; Universal Indemnity Ins. Co. v. North Shore Delivery Co., 7 Cir., 100 F.2d 618.

Webster's Dictionary defines "pursuant" primarily to mean—"acting or done in consequence or in prosecution (of anything)."

To construe this phrase as interpreted by appellant would be a strict construction and would not be in conformity with the general intent and purpose of the rules of the Commission contained in the endorsement or rider. A more reasonable and, we think, the proper interpretation is, "pursuant," in the sense of "acting or done in consequence" of the permit of convenience and necessity, and in the prosecution of the business authorized therein. In so far as the certificate of convenience and necessity is concerned it was complete when it recited permission to serve a certain route. It was the business and permit to operate upon a certain route that comprised the certificate of convenience and necessity. It had to do with the nature of the transportation, not with the character of the operation.

And these conclusions are the more apparent after consideration of the entire Missouri Bus and Truck Law. These statutes prescribe a detailed plan of supervision and regulation of motor vehicles engaged in the transportation of passengers and freight for hire over the highways of the State. The Missouri Public Service Commission is made the enforcement agency of the State. No "motor carrier" or "contract hauler" may operate legally within the State without first obtaining a certificate or permit from the Commission. Sec. 5264–5280, Laws of Missouri, 1931, as amended in 1935 and 1937 Mo.St.Ann. §§ 5264–5280, pp. 6679–6695. As a prerequisite to securing the permit the carrier must file a liability insurance policy or bond with the Commission. Sec. 5273. Not all motor vehicles are included within the Act, however, and Sec. 5265 excludes, among others, passenger vehicles not exceeding a capacity of five persons and trucks engaged in hauling dairy products and livestock from farm to market or market to farm.

■ It is clear that under these statutes the Commission's power to require the carrier to purchase liability insurance as a prerequisite to granting a permit is limited to those vehicles used in the transportation service over which the commission has supervision. The phrase then may be interpreted to exclude from the scope of the coverage those vehicles not under the Commission's supervision.

We are satisfied that the provisions of the policy covered any motor vehicles used by the assured in his business within the territory authorized by the certificate of convenience and necessity and while the permit was suspended. And this finding carries out the general purpose of the Missouri Bus and Truck Law and the regulations of the Commission to provide for the protection of the general public in respect to accidents caused by trucks operated in the business for which the permit was issued. See Sills v. Schneider, 197 Wash. 659, 86 P.2d 203; City of Detroit v. Drivers Ass'n, 254 Mich. 263, 237 N.W. 61, 74 A.L.R. 1306; Sandolovich v. United States Fidelity & Guaranty Co., 142 Misc. 463, 254 N.Y.S. 563; Hindel v. State Farm Mut. Auto Ins. Co., 7 Cir., 97 F.2d 777; Liberty Mut. Ins. Co. v. McDonald, 6 Cir., 97 F.2d 497.

In its third assignment of error is the claim that Kelsa Beane operating as a common carrier of goods used a motor vehicle in violation of a public policy of the State. It must be admitted that if Kelsa Beane were operating his motor vehicle

contrary to the public policy of the State, it would raise a serious question whether the insurance policy would be invalid even against third parties.

In this connection the appellant contends that the motor vehicle act was passed for the protection of the public and that the insured was not only violating the rules of the Commission, but also a statute of the State. It is true that in so operating in violation of the rules of the Commission the insured was guilty of a misdemeanor under Section 5275 of the Revised Statutes of Missouri, 1929, as amended by the Session Laws of 1931, which provide, among other things, that— "Every owner, * * * employee of any motor carrier * * * who fails to obey, observe or comply with any order, decision, rule or regulation * * * of the commission * * * shall be guilty of a misdemeanor."

And the court in its conclusion of law, No. 8, stated: "It was illegal and a misdemeanor for Kelsa Beane to operate as a motor carrier for hire over the highways of Missouri on April 30, 1933, after his certificate of convenience and necessity was suspended."

These violations however were of the rules of the Commission; and the statute of the State relied upon by appellant, (section 5268 of the Revised Statutes of Missouri, Mo.St.Ann. § 5268, p. 6684), making it a misdemeanor to operate a motor vehicle on the public highways of the State without a certificate of convenience and necessity, does not apply to the insured as he was not operating without a certificate.

It is not every unlawful act that constitutes a violation of the public policy of the State.

Appellant does not cite any authorities holding that violations of rules of a public commission would result in voiding an indemnity insurance policy.

In the case of Rainer v. Western Union Tel. Co., Mo.App., 91 S.W.2d 202, 207, the plaintiff was operating as a common carrier of goods without first having procured a certificate of convenience and necessity as required by the motor carrier act and, while the court does discuss the question of public policy, it did not say that the contract was illegal on that account, but that—"We think that the plaintiff, by reason of his unlawful contract to transport the cream in question, which contract was contrary to the statutes and the ordinance of the Public Service Commission of Missouri, has no cause of action against the Western Union Telegraph Company, the defendant in this case."

The situation here presented is quite different from those cases cited by the appellant where no certificate of convenience and necessity was ever issued and in those cases where a license to do business is required and a person does business without having secured such a license. Universal Indemnity Ins. Co. v. North Shore Delivery Co., supra; Frohoff v. Casualty Reciprocal Exchange, Mo.App., 113 S.W.2d 1026; Wooldridge v. Scott County Milling Co., Mo. App., 102 S.W.2d 958. It is unnecessary for us to determine whether operating as a common carrier without a certificate of convenience and necessity would be an act contrary to the public policy of the State, as here the insured was acting in pursuance to a certificate of convenience and necessity although it had been suspended.

We have here only violations of certain rules of the Commission and not violations of any public policy of the State.

Finding that the court was not in error in refusing to consider as law those conclusions relied upon here for reversal, the order and judgment of the court appealed from is

Affirmed.