## CALDWELL v. TRAVELERS INS. CO.
### et al.
### No. 235.

District Court, W. D. Arkansas, Fort Smith Division.

June 2, 1942.

Hugh M. Bland, Pryor & Pryor, and G. Byron Dobbs, all of Fort Smith, Ark., for plaintiff.

Hill, Fitzhugh & Brizzolara, of Fort Smith, Ark., for defendants.

MILLER, District Judge.

The plaintiff seeks a declaration of rights under the Declaratory Judgment Act, Title 28 U.S.C.A. § 400.

### Abstract of Pleadings.

He alleged in his complaint that the defendants issued two insurance policies to the Black & White Transfer Company, Inc., for coverage on its equipment from April 5, 1938 to April 5, 1939, with limitations of amount of liability for bodily injuries; that to said policies was attached the Arkansas endorsement which was set forth in the complaint, being the endorsement required by Section 2025 of Pope's Digest of the Statutes of Arkansas.

That he received personal injuries by being struck by a vehicle operated by the Black & White Transfer Company, a corporation, on October 3, 1938, while both of said policies were in full force and effect; that he had obtained judgment in the Sebastian Circuit Court, Fort Smith District, against the Black & White Transfer Company, a corporation, Yellow Cab Transit Company, a corporation, R. A. Staton, Paul Gechter and Dorothy S. Hudgen, in the sum of $15,000 as damages for said personal injuries, which judgment has not been paid.

That a justiciable actual controversy has arisen between the plaintiff and the defendants and this action is brought to determine the question of liability of the defendant. insurance companies to the plaintiff on said judgment.

On January 20, 1942, the defendants, The Travelers Fire Insurance Company and the Travelers Indemnity Company, filed answer alleging that the defendant, The Travelers Insurance Company, solely assumed coverage (a) in the policies and that coverage (a) was the only coverage that might be applicable in this suit, and that said coverage did not include the taxicab driven by Monty Robinson which caused the injuries to the plaintiff.

The defendant, The Travelers Insurance Company, in its answer alleged that the judgment sued upon by the plaintiff against the Black & White Transfer Company, Inc., and others was not a final determination of the liability of the Black & White Transfer Company, Inc., for the reason that the said Black & White Transfer Company, Inc., had prayed and been granted an appeal from the judgment rendered against it in favor of the plaintiff; that it, The Travelers Insurance Company, was not a party to said suit and was not notified by the Black & White Transfer Company, Inc., of said suit as required by the policies herein sued upon and that it did not know that said suit was pending until the plaintiff's attorney made demand upon it on account of said judgment; that plaintiff was not entitled to recover a judgment against the Black & White Transfer Company, Inc., and that the evidence introduced by the plaintiff in said suit was insufficient to support the verdict and judgment rendered therein; that should the Supreme Court of Arkansas affirm the judgment rendered in favor of the plaintiff against the Black & White Transfer Company, Inc., then will arise a controversy between the plaintiff and this defendant on the issue of the coverage of the liability incurred by the Black & White Transfer Company, Inc., but that until the Supreme Court of Arkansas determines the appeal there is no liability established against the Black & White Transfer Company which could be a basis for the suit against the defendant.

The defendant prays that the action be dismissed because no controversy exists between plaintiff and it.

The defendant further alleged that assuming the taxicab which struck the plaintiff was owned by the Black & White Transfer Company, Inc., and driven by one of its employees, that the insurance referred to does not cover the taxicab because the Black & White Transfer Company, Inc., was operating under a certificate granted by the Arkansas Railroad Commission to operate a motor freight transportation line in Arkansas as an irregular common carrier in intrastate freight of specified commodities consisting of used household goods, used machinery and tools and store fixtures over certain designated routes within the State.

That the defendant issued to the said Black & White Transfer Company, Inc., its policy No. FA-1109020 pursuant to paragraph (e) of Section 3 of Act 99 of the Acts of 1927 and described the vehicles to be used in said business, which vehicles were trucks, a trailer and a tractor as a condition precedent to issuing of the certificate commonly called a permit, and made thereupon the statutory endorsement required by law; that said endorsement waived a description of the vehicles to be used in the business and is limited to injury caused by any and all motor vehicles operated by assured pursuant to certificate issued by the Railroad Commission; that the taxicab by which the plaintiff was injured was not operated in the business which the certificate authorized the company to operate; that the operation of any other line than authorized by said certificate made such company (Black & White Transfer Company, Inc.), or any individual so doing, guilty of misdemeanor and punishable by said paragraph (e) of Section 3 of Act 99 of the Acts of 1927.

That policy No. FA-1109209 was not a statutory policy, but a contractual policy supplementary to the statutory policy, and was not required to contain the statutory endorsement; that said policy limited its coverage to operations authorized in the certificate and limited it to vehicles specified therein, consisting of vans, tractor and a one ton semi-trailer; that said policy is not applicable to any injury received by the plaintiff by riding in any other vehicle of the Black & White Transfer Company, Inc., other than those mentioned and described in Rider No. 1587.

That each of the policies referred to in the complaint contained a provision under the caption "exclusions" as follows: "This policy does not apply (a) under any of the above coverages, while the automobile is used in the business of demonstrating or testing, or as a public or livery conveyance, or for carrying persons for a consideration, or while rented under contract or lease, unless such use is specifically declared and described in this policy and premium charged therefor."

That the taxicab driven by Monty Robinson at the time of the injury to the plaintiff was used by its owner as a public conveyance and for carrying passengers for a consideration and was excluded from said coverage; that no premium was paid to the defendant covering any such liability as herein sued for.

That the proceedings in the Sebastian Circuit Court, Fort Smith District, are not relevant to the issues herein, in that the issues therein raised and determined were the ownership of the taxicab and the operation thereof by Monty Robinson, whether negligent or not, and the conduct of the plaintiff; that this defendant was not a party thereto and had no knowledge of said suit while it was pending, but was entitled to notice of the pendency of said suit; that there was no issue raised or determined therein as to the coverage for the injuries therein sued upon and no issue could have been properly raised therein; that said issue is raised for the first time in this complaint wherein the plaintiff alleges that the policies did cover liability for his injuries and that is an issue now presented for the first time.

That it denies liability to the plaintiff for any amount and in the alternative alleges that if there is any liability it is limited under policy No. FA-1109020 to $5,000: that policy No. FA-1109209 is not applicable to the injuries sued upon.

By an amendment filed January 28, 1942 to the answer, it alleged that the Black & White Transfer Company, Inc., was not the sole owner of the taxicab driven by Monty Robinson which caused the injury to the plaintiff and that both policies contain a provision that the insured is the sole owner of the automobile and that the term "automobile" used in the policy is de-

fined to be "the motor vehicle, trailer or semi-trailer described in the policy."

That the statutory endorsement attached to Policy No. FA–1109020 did not alter, change or modify the declaration that the vehicle covered by the insurance and causing the injury was solely owned by the assured.

## Abstract of Orders of Court.

On February 27, 1942, the case was tried to the court without a jury and the cause was taken under advisement.

On May 16, 1942, a memorandum opinion was filed by the court directing a judgment be entered for plaintiff and finding the defendant, The Travelers Insurance Company, Inc., liable under both policies.

On May 22, 1942, findings of fact and conclusions of law were filed by the court.

On May 25, 1942, the defendant filed a motion to amend the findings of fact under Rule 52(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and for a new trial or rehearing under Rule 59. Also on the same date defendant filed motion to reopen testimony and to admit evidence from the records of the Arkansas Corporation Commission.

On May 26, 1942, the court on its own motion withdrew its findings of fact and conclusions of law, as well as the memorandum opinion, and on the same date the defendant withdrew its motion to reopen the testimony and motion to amend findings of fact and for a new trial or a rehearing. On the same date the court fixed May 29, 1942, as the date for the production of additional testimony and for oral argument of the cause, and on that date the defendant introduced in evidence its Exhibit No. 4 in the form of a certificate executed by Georgia Walker, Assistant Secretary of the Arkansas Corporation Commission on May 25, 1942.

## Findings of Fact.

The facts as disclosed by the testimony and as found by the court are as follows:

(1) That the plaintiff, Clarence Caldwell, is a citizen and resident of the State of Arkansas, Fort Smith Division, Western District of Arkansas; that the defendants are corporations organized and existing under the laws of the State of Connecticut and are authorized to engage in the liability insurance business in the State of Arkansas; that the amount in controversy exceeds the sum of $3,000 exclusive of interest and costs; that this action was brought under the Declaratory Judgment Act of the United States Congress, Title 28 U.S.C.A. § 400.

(2) That on October 3, 1938, plaintiff was struck by a taxicab and as a result thereof was seriously injured.

(3) That on May 16, 1941, plaintiff filed a complaint in the Sebastian Circuit Court against the Black & White Transfer Company, a corporation, Yellow Cab Transit Company, a corporation, R. A. Staton, Paul Gechter and Dorothy S. Hudgen praying for damages and alleging that "the defendants were operating their Black and White cab through their agent, servant and employee, Monty Robinson."

(4) Answer was filed by Black & White Transfer Company, Yellow Cab Transit Company, R. A. Staton and Dorothy S. Hudgen on October 9, 1941, in which they denied the allegations of the complaint and pleaded contributory negligence on the part of the plaintiff. These defendants further alleged, "that the taxicab which struck the plaintiff, Clarence Caldwell, was a cab owned and operated by the Drivers-Owners Association, an Arkansas corporation. That the Drivers-Owners Association was adjudged a bankrupt by the United States District Court for the Western District of Arkansas, and that if the plaintiff, Clarence Caldwell, had a cause of action, it was against the Drivers-Owners Association and not against any of these defendants."

The defendant, Paul Gechter, filed his answer on June 12, 1941, containing the same allegations as those contained in the answer of the other defendants.

(5) On October 11, 1941, the plaintiff filed a reply to the answers of the defendants in which he denied that the taxicab which struck him belonged to the Drivers-Owners Association and alleged, "that the Drivers-Owners Association was the same as the Black & White Transfer Company, Yellow Cab Company, R. A. Staton and Dorothy S. Hudgen; that said corporations and individuals were identical; and that said corporations and individuals, including Paul Gechter, have been adjudged by a court of competent jurisdiction to be identical and to be joint adventurers or partners in said business; and that said taxicab belonged to said defendants, as per copy of said judgment hereto attached, marked Exhibit A and made a part of this reply."

(6) That case was tried on October 30 and 31, 1941, to a jury in the Sebastian Circuit Court, Fort Smith District, and the jury returned a verdict for the plaintiff and assessed his damages at $15,000. Upon that verdict judgment was rendered in favor of plaintiff against all of the defendants therein.

(7) On December 4, 1941, execution was issued against all of the defendants upon said judgment and on December 10, 1941, the execution was returned nulla bona by the sheriff of Sebastian County.

(8) At the time this suit was brought the defendants in the Sebastian Circuit Court, Fort Smith District, had prayed an appeal from said judgment to the Supreme Court of Arkansas, without supersedeas, and time had been given the defendants to prepare and file a bill of exceptions and the time had not expired when this case was tried.

(9) The defendants, Insurance companies, on April 5, 1938, issued two policies, automobile policy No. FA–1109209 and automobile policy No. FA–1109020, which continued in force and effect until April 5, 1939. The premiums accruing under both policies were paid to the defendant, The Travelers Insurance Company, and the policies were in fact issued by that defendant, notwithstanding they were upon forms applicable to the other defendants, insurance companies.

In each of these policies the Black & White Transfer Company, Inc., was designated as the insured. The occupation of the insured was stated as "Furniture Mover". The description of the automobiles covered in policy No. FA–1109209 are two, two ton vans; one, one and a half ton tractor and one, one ton semi-trailer, all for commercial uses. In Policy No. FA–1109020, the same automobiles are described, together with the addition of a rider, No. 2707, providing for other automobiles not owned by the insured, but which might be hired by insured in the prosecution of its work.

Attached to policy No. FA–1109020 is the endorsement required by subsection (e) of section 2025 of Pope's Digest of the Statutes of Arkansas, reading as follows:

"The policy to which this endorsement is attached is written in pursuance of and is to be construed in accordance with an Act of the General Assembly of the State of Arkansas for the year 1927, entitled, 'An Act to provide for the regulation, supervision and control of motor vehicles used in the transportation of persons or property for compensation in the State of Arkansas, and for other purposes;' and amendments thereto; and with the rules and regulations of the Corporation Commission of the State of Arkansas. Policies to be filed with the said Commission in accordance with said statute.

"In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby waives a description of the motor vehicles to be insured hereinunder, and agrees to pay any final judgment for personal injury, including death, resulting therefrom and or damage to property, other than assured, caused by any and all motor vehicles operated by the assured, pursuant to a certificate issued by the Corporation Commission of the State of Arkansas within the limit set forth in the schedule shown hereon, and further agrees that upon its failure to pay any such final judgment such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof, by the assured shall relieve the company from liability hereunder or from the payment of any such judgment."

The schedule immediately following this endorsement provides:

"On each motor vehicle used for the transportation of property, not to exceed: $5000.00 for any recovery for personal injury by any person, $10,000.00 for all persons receiving personal injury by reason of one act of negligence, and not to exceed $1,000.00 for damage to property of any person other than the assured.

"On each motor vehicle used for the transportation of persons, having passenger capacity of twelve passengers or less, not to exceed: $5000.00 for any recovery for personal injury by one person; $10,000.00 for all persons receiving personal injury by reason of one act of negligence; and not to exceed, $1,000.00 for damage to property of any person other than the assured."

Attached to and as a part of policy No. FA–1109209 was rider No. 2643, reading as follows:

578

"Excess Insurance Endorsement
"Amending Policy No. FA–1109209.
"It is agreed that such insurance as is afforded by the policy for bodily injury liability applies subject to the following provisions.
"1. If bodily injury occurs with respect to which insurance is afforded under policy No. FA–1109020 (herein referred to as 'Statutory Policy') the insurance thereunder shall first be applied and the limits of liability thereunder shall first be fully exhausted before any of the limits of liability under this policy shall apply.
"2. The limits of liability expressed in said statutory policy are included in the limits of liability applicable to this policy and are not in addition thereto."

(11) Pages 1, 2 and 3 of rider 1721 (D), attached to policy No. FA–1109020, extended the policy to operations in the State of Oklahoma.

(12) On April 5, 1938, J. B. Lyles, Assistant Cashier of the defendant company, wrote the following letter:

"Public Service Commission,
"Little Rock, Arkansas.
"In re: Black and White Transfer Co., Inc.
"Gentlemen:
"Enclosed please find binder as evidence of insurance covering this assured's operations in accordance with the requirements of your department. This binder will be replaced in due course by a duplicate policy.
"Please acknowledge receipt of this binder by stamping the extra copy of this letter and returning it in the self-addressed envelope enclosed."

This letter was received by the Arkansas Corporation Commission on April 7, 1938, together with the binder enclosed therein. The binder provides that effective April 5, 1938, policy Form FA– fixing liability for one person at $25,000; one accident at $50,000 and property damage at $5,000 was in force in favor of Black & White Transfer Company, Inc., and that the conditions and coverage were stated on the reverse side, as follows: "This binder shall terminate and expire without notice at the end of the four hundred eightieth hour after it becomes effective, but it may be sooner terminated in whole or in part: (1) by cancellation by either party or by suspension by the company in the manner permitted by the designated

policy form or any endorsement thereon, to which such cancellation or suspension applies; (2) by issuing to the employer or assured named as such in the binder schedule a duly executed policy or policies."

On April 28, 1938, the defendant company wrote the following letter:
"Corporation Commission,
"State of Arkansas
"State Capitol
"Little Rock, Arkansas.
"Gentlemen: Re: Black and White Transfer Company, Inc.
        FA–1109020  FA–1109209
"I am attaching a filing policy which our Cleveland Branch Office asked me to countersign and forward to you.

"Will you please acknowledge receipt of this filing policy to Mr. J. B Lyles, Assistant Cashier, Cleveland, Ohio, care of The Travelers Insurance Company, Hanna Building, Cleveland, Ohio.
        "Yours very truly,
        "W. T. Hatley, Cashier."

On April 29, 1938, policy No. FA–1109020 was received by the Arkansas Corporation Commission and filed. Policy No. FA–1109209 was not received by the Arkansas Corporation Commission.

On October 5, 1937, the Arkansas Corporation Commission issued its certificate No. B–495 to the Black & White Transfer Company, Inc., granting it authority to operate a motor freight transportation line in Arkansas as a common carrier upon and along certain routes described in the certificate.

The certificate contains the following: "That the application of Black & White Transfer Company, a corporation, with principal offices and place of business at 915 North A Street, Fort Smith, Arkansas, for a license certificate or permit to operate a motor freight transportation line in Arkansas, as an irregular common carrier of intrastate freight of special commodities, consisting of used household goods, used machinery and tools, and store fixtures over the following described route, to-wit: (description of route) be, and the same is hereby granted for an indeterminate period of time provided that the transportation of said used machinery and tools be restricted to a seventy-five mile radius from the city limits of Fort Smith, Arkansas."

(15) The limitation of liability for one person under policy No. FA–1109020 was

$5,000, and under Policy No. FA–1109209 was $25,000.

(16) The taxicab which struck and injured the plaintiff was being driven by Monty Robinson during the early morning hours of October 3, 1938. The cab had called for a passenger, Mrs. McGee, on South Q Street in the city of Fort Smith. Mrs. McGee had an arrangement with the driver, Monty Robinson, whereby he would call for her each morning at 5:45 and transport her to her place of work at the Federal Building in Fort Smith. On this particular morning M. T. Milligan entered the taxicab while it was waiting in front of the home of Mrs. McGee, and he, Milligan, at the time of the injury to the plaintiff, was being transported to his place of work, a plumbing shop in another section of the city.

(17) At the time of the injury to the plaintiff the Drivers-Owners Association was operating a public taxicab service in Fort Smith under the trade-name of Black & White Cab Company. The Drivers-Owners Association and the Black & White Transfer Company, Inc., were operated by the same officers and occupied the same place of business. The officers of both corporations were the same and both corporations were under the same management and control. Both corporations had separate telephones and separate telephone numbers, but the telephones had a switchboard connection and the night dispatcher answered the calls for both companies. The Black & White Transfer Company, Inc., the insured, did business as the Drivers-Owners Association, and about the time the plaintiff was injured the insured, Black & White Transfer Company, Inc., and the Drivers-Owners Association were passing through the process of legal separation, but the corporations had not been legally separated and at the time of the injury to plaintiff they were operating together.

(18) Ferrell Christie was a dispatcher in the employ of the Black & White Transfer Company, Inc. A call came to the office of the Black & White Transfer Company, Inc., some time during the late afternoon or early evening of the day preceding the injury to the plaintiff, for the transfer company to send a pickup truck the next morning and to convey a plumber helper (M. T. Milligan), together with such tools as he might have, from his home to the plumbing shop owned by Dured Hays.

A record was made of the call, but that record had been destroyed at the time of the trial and no one was able to state who placed the call for the conveyance to be furnished to Milligan. The call was given to the driver of the taxicab, Monty Robinson, by an employee of the Black & White Transfer Company, Inc., and he was requested to convey "a man with plumbing tools from near the place where Mrs. McGee lived to the plumbing shop."

(19) The cab that was driven by Robinson was a Black & White cab and Robinson was to be paid for transporting Milligan and his tools by the Black & White Transfer Company, Inc. Robinson did not own the cab.

(20) The insured, Black & White Transfer Company, Inc., was in full control of all operations of the Drivers-Owners Association and the driver of the taxicab at the time the injury was received by the plaintiff was under the direction and control of the insured, Black & White Transfer Company, Inc., and was engaged in the business of transporting persons for hire, as well as intrastate freight.

(21) That the taxicab which struck and injured plaintiff was at the time being operated by the insured, Black & White Transfer Company, Inc., pursuant to a license certificate granted by the Arkansas Corporation Commission.

(22) The policies issued by the defendant company covered the operations of any and all motor vehicles used by the Black & White Transfer Company, Inc., at the time of the injury to the plaintiff, either in the transportation of persons or property.

Concurrently with the filing of the above findings of fact, the court filed formal conclusions of law, holding the defendant liable to the plaintiff for the full amount of the judgment recovered by him for damages sustained on account of the injuries received.

■ There is diversity of citizenship of the plaintiff and defendant and more than $3,000 exclusive of interest and costs is involved. The court has jurisdiction to determine the legal rights of the parties. United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 97 F.2d 560; Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166; Columbian National Life Ins. Co. v. Foulke, 8 Cir., 89 F.2d 261; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

580

■ The pleadings and testimony present an actual controversy between the plaintiff and defendant within the provisions of the Declaratory Judgment Act, 28 U.S.C.A. § 400.

Able counsel have filed most excellent briefs and subsequent thereto the case was argued orally. The various contentions of the parties have been thoroughly and ably argued. In discussing the questions arising under Policy No. FA–1109020, counsel for defendant, state: "Our contention is that the policy does not cover the injury here sued for, and not on account of the failure to give the notice and comply with other provisions of the policy, like cooperation, but because the injuries sued for are beyond the contract entered into between the insured and the insurance company."

Able counsel thus recognize the force and effect of the statutory endorsement on that policy, which among other things provides: "Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof, by the assured shall relieve the company from liability hereunder or from the payment of any such judgment."

■ The judgment recovered by the plaintiff in the Sebastian Circuit Court, Fort Smith District, for the injuries sustained is not conclusive of the rights of the plaintiff and the defendant here, even though plaintiff might have filed suit against the defendant to collect the judgment since an execution had been returned nulla bona and the judgment not superseded. Section 7774, 7775, Pope's Digest of the Statutes of Arkansas; Maryland Casualty Co. v. Waggoner, 193 Ark. 550, 101 S.W.2d 451.

The rights of the plaintiff in regard to the insurance would rise no higher than those of the insured, except for the provision of the statute, Section 2025, Pope's Digest, Statutes of Arkansas, which is carried forward in the statutory endorsement on this policy.

■ Counsel for defendant contends that the schedule of liability inserted in this policy was not voluntary, but was required by Act 99 of the Acts of the General Assembly of Arkansas for the year 1927, and that the part of the policy containing such schedule should be treated as surplusage. This schedule is a limitation of liability of the amount recoverable for personal injury to any person by any motor vehicle used for the transportation of property or for the transportation of persons.

Sections 1, 2, 3, 4, 5, 6, 8 and 9 of Act 99, supra, were specifically amended by Act 62 of the Acts of the General Assembly of the State of Arkansas for the year 1929, and the amendatory act appears as sections 2023–2028 of Pope's Digest of the Statutes of Arkansas, and control here.

Section (e) of Section 3 of Act 99, supra, sets forth the schedule of liability shown in this policy, but that section of Act 99, supra, was amended as hereinbefore pointed out by paragraph (e) of section 2025 of Pope's Digest, supra, and instead of setting forth a schedule of liabilities, provides that the amount of liability shall be "in such sum as the Commission may designate, for the protection of all persons, including passengers, and property resulting from the negligent operation of such motor vehicle carrier."

It is obvious that the Corporation Commission required that the insured obtain protection for all persons in an amount greater than the amount provided by Act 99, supra. It will be remembered that the binder issued by the defendant on April 5, 1938, described the insurance as policy form FA with limits of liability to one person, $25,000 and one accident $50,000. This binder was issued under the law as it then existed and in a sum which the commission had designated. Later, and on April 28, 1938, the binder was superseded by the filing of the policy No. FA–1109020 which contained the limitation of liability set forth in Act 99, supra, but on the same date there was attached to policy No. FA–1109209 the rider, 2643, which extended the limit of liability under policy No. FA–1109020 to $25,000 to one person. Both policies were dated April 22, 1938, but as found by the court only policy No. FA–1109020 was actually filed with the Corporation Commission. No purpose could have been served by attaching to policy No. FA–1109209 the "excess insurance endorsement," rider 2643, except to increase the amount of protection to all persons. Therefore, the court is not at liberty to disregard or to treat as surplusage the schedule of liabilities set forth in either of the policies.

■ The defendant contends that the coverage of the policies is limited to business authorized to be carried on under the certificate or permit issued to the insured

by the Corporation Commission and that the carrying of passengers for hire was not the business authorized by the certificate and was forbidden by the certificate as well as by the terms of the policy No. FA–1109020.

In support of this contention the defendant introduced a certified copy of an order or a license certificate issued by the Arkansas Corporation Commission on October 5, 1937. This certificate has heretofore been set forth. It must be borne in mind that this certificate was "granted for an indeterminate period of time" and that the commission retained "jurisdiction of the parties and of the subject matter for the purpose of issuing such other and further order or orders as may be deemed necessary."

Paragraph (e) of Section 2025, Pope's Digest, supra, provides: "The Commission shall, at the time of granting a license certificate and as a condition precedent to the granting thereof, require a surety policy or a surety bond, satisfactory to the Commission, in some insurance company or association or other insurer authorized to transact business in this State, in such sum as the Commission may designate, for the protection of all persons, including passengers, and property resulting from the negligent operation of such motor vehicle carrier."

The certificate of the Secretary of the Arkansas Corporation Commission attached to the order merely states that the same is a true, compared and correct copy as the same appears on page 17, volume 5 of the records of the commission. Under the law the commission could not issue the license certificate to the assured until and unless the insurance policy or policies were issued and filed "in such sum as the commission may designate". As heretofore pointed out both policies are dated April 22, 1938, but only one policy carrying a limit of liability of $25,000 for one person and $50,000 for one accident was placed in effect on April 5, 1938, by the filing of the binder. This was exactly six months subsequent to the date of the license certificate introduced by the defendant.

Policy No. FA–1109020 with the various riders attached thereto was filed with the commission "in pursuance of and is to be construed in accordance with an Act of the General Assembly of the State of Arkansas for the year 1927, entitled, 'An act to provide for the regulation, super-vision and control of motor vehicles used in the transportation of persons or property for compensation in the State of Arkansas, and for other purposes' and amendments thereto".

Thus, the defendant in issuing and filing this policy clearly stipulated and agreed to pay damages for injuries inflicted by any and all motor vehicles used for the transportation of persons or property.

Section 2028 of Pope's Digest, supra, provides: "If any person, firm or association or corporation operates any motor vehicle carrying passengers or freight for compensation without first securing a permit as herein provided, it shall be guilty of a misdemeanor and punishable by a fine of not less than Fifty Dollars and not more than One Thousand Dollars, or by imprisonment for six months, or by both fine and imprisonment, in the discretion of the court. Each day such operation is continued shall be a separate offense."

The same section of the statute further provides that any person "who procures, aids or abets the violation of any provision of this act" shall be guilty of a misdemeanor, punishable by a fine of not less than $50 and not more than $500.

In section 2023 of Pope's Digest, supra, it is provided, that "The terms 'motor vehicle' or 'motor propelled vehicle' as used in this act shall apply to all motor vehicles engaged in transporting passengers or property for compensation over improved public highways of this State."

It is further provided in the same section: "The term 'improved public highway' wherever used in this act means every improved public highway in this State which is or may hereafter be declared to be a part of the State Highway System, or any county highway system, or the streets of any city or town."

It cannot be assumed that the insured was operating a business in violation of the law and that the defendant was aiding or abetting in such violation. The insured would not have contracted for, nor would the defendant have issued and filed a policy providing for payment for injuries to passengers if the business to be conducted was to be confined to transportation of intrastate freight.

The defendant in said policy agreed "to pay any final judgment for personal injury, including death, resulting therefrom and or damage to property other than as-

582

sured, caused by any and all motor vehicles operated by the assured pursuant to a certificate issued by the Corporation Commission of the State of Arkansas within the limit set forth in the schedule shown hereon."

The insured was acting in consequence of a license certificate. First the binder was filed in conformity to the requirement of the Corporation Commission and subsequently policy No. FA–1109020 was filed with the commission and the defendant extended the limits of liability in that policy to $25,000 for one person by rider hereinbefore referred to attached to policy No. FA–1109209. The defendant cannot now be heard to say that the operations of the taxicab that caused the injury to plaintiff was not "pursuant" to a license certificate. Trinity Universal Ins. Co. v. Cunningham, 8 Cir., 107 F.2d 857.

■ Sections 2023 to 2029, both inclusive, and sections 7774 and 7775 of Pope's Digest, supra, were a part of the policies. Universal Automobile Ins. Co. v. Denton, 185 Ark. 899, 50 S.W.2d 592; Casualty Reciprocal Exchange v. Bounds, 191 Ark. 934, 88 S.W.2d 836; American Liberty Mutual Ins. Co. v. Washington, 183 Ark. 497, 498, 36 S.W.2d 963; Sun Life Assurance Co. v. Coker, 187 Ark. 602, 61 S.W.2d 447.

■ The defendant also contends that the insured was not the owner of the vehicle causing the injury and that it was not being used for commercial purposes.

The instructions that the Sebastian Circuit Court, Fort Smith District, gave the jury in the trial of the case in which judgment was rendered against the insured, Black & White Transfer Company, Inc., for the injury to the plaintiff, were introduced in evidence. Counsel on the brief for defendant sets out one of those instructions as follows: "You are instructed that if you find from a preponderance of the evidence that the plaintiff, while in the exercise of ordinary care, was injured, and that the defendants were at the time operating their taxicab along and upon said street, through their agent, servant and employee, Monty Robinson, and that the negligence of the said Monty Robinson was the proximate cause of the injuries, if any, to the plaintiff, then you should return a verdict for the plaintiff, unless you find that the plaintiff failed to exercise ordinary care to prevent his own injuries.

Counsel further state:

"The other instructions reached to the questions of contributory negligence, burden of proof and proximate cause. Therefore, it is seen that the question of whether the insurance policies herein sued upon covered the Black & White Transfer Company, Inc., was not an issue therein.

"It is alleged in the complaint herein that it did cover, and that presented an issue upon which the plaintiff has the burden of proof."

The court has found that the insured was in full control of all operations of the Drivers-Owners Association and the driver of the taxicab at the time the plaintiff was injured; that the insured was engaged in the business of transporting persons for hire, as well as intrastate freight at the time; that the vehicle was being operated pursuant to a license certificate; that the driver of the taxicab was to be paid for transporting the plumber helper and his tools by the insured.

In the case of Trinity Universal Insurance Company v. Cunningham, supra [107 F.2d 860], the court said: "It is a general rule of law that an insurance policy must be interpreted to give effect to the intention of the parties so far as such intention can be discovered from the language of the policy and where the meaning of an insurance policy is fairly susceptible of two constructions, it should be construed most strongly in favor of the policy holder."

In the case of Stipcich v. Metropolitan Life Insurance Company, 277 U.S. 311, 322, 48 S.Ct. 512, 515, 72 L.Ed. 895, the Supreme Court of the United States said: "But narrow and unreasonable interpretations of clauses in an insurance policy are not favored. They are prepared by the insurer and if, with equal reason, open to two constructions, that most favorable to the insured will be adopted."

Reading the policies and the various riders attached thereto in connection with the sections of the statutes of Arkansas heretofore referred to, it is apparent that the insured and the defendant intended to cover operations of "any and all motor vehicles" used by the insured either in the transportation of persons or property. The insured was exercising acts of ownership over the vehicle that caused the injuries to the plaintiff. The facts disclosed that the driver of the vehicle was given the order to transport a man with plumbing

tools from near the place where Mrs. Mc-Gee lived to the plumbing shop, and that the vehicle was being used for that purpose at the time.

The defendant is liable to the plaintiff under policy No. FA–1109020, and since the limit of the liability under that policy was extended to $25,000 by rider attached to policy No. FA–1109209, the amount of the liability is sufficient to cover the entire judgment, interest and costs recovered by plaintiff against the Black & White Transfer Company, Inc.

Judgment for plaintiff in accordance with the findings of fact and conclusions of law filed herein and in accordance with this opinion will be entered.