CUNDIFF et al. v. WILLS et al.

MARTIN v. WILLS et al.

Nos. 938, 939.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 28, 1950.

Decided Oct. 17, 1950.

Rehearing Denied Nov. 27, 1950.

Leonard S. Hayes, Washington, D. C., for Cundiff and others.

John F. Donelan, Washington, D. C., with whom Alexander M. Heron, Washington, D. C., was on the brief, for appellee American Casualty Co.

James I. Heinz, Washington, D. C., with whom Joseph A. Carey, II Washington, D. C., was on the brief, for appellee Massachusetts Bonding & Insurance Co.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Under the Real Estate and Business Brokers' License Act for the District of Columbia,[1] the licenses issued to such brokers expire July 1 of each year. The brokers must be bonded in order to secure a license. The present appeals involve the

1. Code 1940, § 45—1401 et seq.

liabilities of two bonding companies on defaults of a real estate broker where money was entrusted to him prior to July 1 but repayment defaults occurred after July 1 and during the pendency of an application for a new license which was subsequently withdrawn. From judgments in favor of the bonding companies, parties who entrusted their money to the broker appeal.

Four suits, subsequently consolidated for trial, were filed against the real estate broker, Edward L. Wills, and two sureties, American Casualty Company and the Massachusetts Bonding and Insurance Company. Trial resulted in judgment for the several plaintiffs against Wills, who, although subpoenaed, failed to appear. The court, however, found in favor of the surety companies. Lynwood Cundiff and Cassie Cundiff, plaintiffs in one of the cases, and Robert E. Martin, plaintiff in another, are parties to the appeals.

Lynwood Cundiff, through Wills as broker for the seller, entered into a contract for the purchase of a house. Concurrently with the signing of this contract the broker signed a written agreement that he would obtain the financing for the premises on specified terms and that if he could not secure such financing the $500 deposit which Cundiff placed with him at the time of signing the purchase contract would be refunded. All of these negotiations, including the deposit, occurred prior to July 1, 1948. On the settlement date, July 6, 1948, the broker had not obtained the financing agreed upon, and the seller declared a forfeiture of the $500 deposit. Cundiff thereupon made demand on the broker for the return of such deposit. Failure to return the deposit led to one of the present suits.

The other plaintiff, Robert E. Martin, entered into a real estate purchase contract with the broker (as the agent of an undisclosed principal) June 15, 1948. This contract was likewise secured by a deposit of $500 with the broker. An additional deposit of $500 was made on this contract June 30, 1948, resulting in a total deposit of $1,000. July 12, 1948, the broker informed Martin that the seller would be unable to consummate the sale, whereupon Martin demanded from the broker the return of the $1,000 deposit. On July 25, 1948, the broker repaid $250 and an additional $300 August 10, 1948. The remainder, $450, has not been returned to date.

Wills was first licensed as a real estate broker in 1943 and his license was renewed for each of the following years, the last ending July 1, 1948. This license was supported by a bond of the Massachusetts Bonding and Insurance Company, pursuant to statutory requirements.[2] On May 10, 1948, this bonding company filed a 30-day notice of cancellation of its bond.[3] June 9, 1948, the American Casualty Company filed its bond in support of the then outstanding license of Wills "or any renewal or reissuance thereof if the same is issued to the principal."

The evidence showed that prior to July 1, 1948, the Real Estate Commission had received several complaints against Wills arising out of his transactions as a real estate broker and as a result of these complaints the Commission directed that in the event he filed a request for the renewal of his license such request be called to its attention. July 1, 1948, Wills did file his application for renewal for the ensuing year. July 13, 1948, he was served with an order for a public hearing on such application. This hearing was scheduled for July 28, 1948, but on that date Wills appeared before the Commission and withdrew his application. The scheduled hearing was cancelled and Wills was never issued a license as a real estate broker for the year ending July 1, 1949.

---

2. Code 1940, § 45—1405.
3. "The surety may terminate its liability under such bond by giving thirty days' written notice thereof, served either personally or by registered mail, to the principal and to the Commission; and upon giving such notice the surety shall be discharged from all liability under such bond for any act or omission of the principal occurring after the expiration of thirty days from the date of service of such notice." Code 1940, § 45—1405.

An expert from the Real Estate Commission testified that the practice of the Commission was that applications for renewal of licenses were received on or before July 1 and acted upon within two or three weeks. He also testified that it took this period of time for the Commission to process the various applications and issue the new licenses and that "the Commission with regard to any real estate operator who had applied for renewal of his license on or before July 1 of any year took no steps to prevent the continuance of his business as a real estate broker except in the instances where a complaint against said broker had been filed."

The real estate bonds involved here provide for recovery against the bonding company of any damages sustained by reason of any conduct of the broker in violation of any provision of the act or enumerated as a ground for suspension of the license.[4] One of the specified grounds for revoking a license is that the broker "failed, within a reasonable time, to account for or to remit any money, valuable documents, or other property coming into his possession which belong to others".[5] In each of the present cases the gravamen of the charge was that each plaintiff deposited his money with Wills prior to July 1, 1948, but demanded its return after July 1, 1948, and that the refusal or failure to repay the money occurred after July 1. No other violation of the Act was claimed.

■ The first issue presented for our consideration is whether the broker's admitted defaults occurred prior to or after July 1, 1948. While the circumstances might have made possible charges of broader violations occurring prior to July 1, we emphasize that the only charges made here were for the nonreturn of money and that the demands for such return were not made until after July 1. No evidence was offered regarding the financial affairs of the broker or that the deposits were originally

obtained by him fraudulently. It has been held that no obligation arises on the part of a broker to repay until demand is made.[6] Under the circumstances of these cases, therefore, there was no showing that the broker was in default before July 1. We find no support for the view that a default by failure to repay may be dated back to the date of acceptance of money. We conclude, therefore, that each of the two defaults occurred after July 1, 1948.

■ The second and final issue is whether either or both of the bonding companies were liable for the defaults which occurred after July 1, 1948. This issue may be narrowed immediately to the claim against the American Casualty Company, which went on the bond of Wills June 9, 1948, in support of the then outstanding license of Wills or any renewal or reissuance thereof if the same were issued to the principal. The Massachusetts Bonding and Insurance Company cancelled its bond effective June 9, 1948, and the statute specifically provides that upon giving notice of cancellation the surety shall be discharged from all liability for any act or omission of the principal occurring after the cancellation becomes effective. Since under the pleadings and proof in these cases there was no default until after July 1, it seems clear that the Massachusetts Bonding and Insurance Company was no longer liable. As to this defendant, therefore, we unhesitatingly affirm the judgment of the trial court.

The argument with respect to the liability of the American Casualty Company after July 1, 1948, is as follows: The Licensing Act was enacted by Congress to protect the public against unscrupulous and defaulting brokers, and hence the Act should be construed liberally to effectuate that purpose. Since the Act permits brokers to file renewal applications up to and including July 1, and since the Real Estate Commission as an administrative practice per-

4. Code 1940, § 45—1405.

5. Code 1940, § 45—1408(g).

6. Mack v. Massachusetts Bonding & Ins. Co., 136 Cal.App. 63, 27 P.2d 934; Coover v. Cox, 95 Cal.App. 1, 272 P. 343; see also Aetna Casualty & Surety Co. v. State, Tex.Civ.App., 86 S.W.2d 826; Glens Falls Indemnity Co. v. Kirkpatrick, 46 Ohio App. 23, 187 N.E. 643.

mits brokers to stay in business for two or three weeks after July 1 without a formal renewal of the license, it is argued that the courts should give effect to this administrative practice and consider the bond as being also in effect until the new application for a license is actually rejected or withdrawn. We are also told that unless this construction is given to the Act, the public will remain unprotected against unscrupulous or defaulting brokers for two or three weeks following July 1 of each year.

Such argument has a strong appeal. It appears, however, to be contrary to the plain language of the statute and of the bond itself. The statute provides that "every license shall expire on the 1st day of July of each year * * *."[7] As already stated, the bond was given in support of the license outstanding prior to July 1, 1948 "or any renewal or reissuance thereof if the same is issued to the principal." No renewal was ever issued after July 1, 1948, although application therefor was filed and subsequently withdrawn. It results that no license was in effect subsequent to July 1, 1948, and the defaults, as already determined, occurred after that date.

■■ While the question is one of first impression in this jurisdiction, the majority of cases elsewhere in which the point has been considered have held that a bond given to secure the proper performance of his obligations by one to whom a license is to be issued expires with the license.[8] Only two cases apparently to the contrary have been found. In City of Detroit v. Blue Ribbon Auto Drivers' Association, 254 Mich. 263, 237 N.W. 61, the bond had been written by the bonding company and, therefore, there was invoked the principle, often mentioned in insurance law, that in cases of doubt a contract prepared by an insurer will be strictly interpreted against it. No such rule of construction can be called into play here because the form of the bond was prescribed not by the bonding company but by the Real Estate Commission. The other contrary case, United States v. Truesdell, 2 Bond 78, Fed.Cas.No.16,543, is also clearly distinguishable.

■ Here there was no provision either in the statute or in the bond itself giving the bond a longer life than the license except in cases where the license is renewed or reissued. There appears to be a clear gap in the statute or in the regulations issued pursuant thereto for a default occurring, as these did, after the expiration of one license and during the pendency of an application for a new license. It seems clear that the public ought to be protected when a new application is rejected or withdrawn just as there is now protection when a new application is granted. Possibly the bond form could be rewritten to make the bonding company liable on defaults occurring for at least a reasonable time after the expiration of a license. Possibly the Real Estate Commission could provide that applications for renewal of licenses should be made prior to expiration of old ones so that the existing time interval would not exist. These, however, clearly are matters for legislative or administrative action, not for judicial interpretation. We can not rewrite the statute or the regulations but must apply them as they are. We find nothing in general law or in the statute or the bond to support a holding that the bonding company was liable during the period when the defaults in the present cases occurred.

The judgments of the court below are

Affirmed.

7. Code 1940, § 45—1407.
8. Anno. 74 A.L.R. 1309; United States v. Smith, 8 Wall. 587, 19 L.Ed. 506; Spiegler v. Chicago, 216 Ill. 114, 74 N.E. 718; Rumford v. Boston Grocery Co., 111 Me. 116, 88 A. 394; Commonwealth v. Foch Cereal Co., 302 Pa. 373, 153 A. 695; Adams v. State, 105 Tex. 374, 150 S.W. 591; see also Mack v. Massachusetts Bonding & Ins. Co., supra; American Surety Co. of New York v. School Dist. of Haverford Tp., 3 Cir., 101 F.2d 300, certiorari denied 307 U.S. 626, 59 S.Ct. 828, 83 L.Ed. 1510; 2 McQuillin, Municipal Corporation, (2d Ed.) § 570, p. 405.