**PHOENIX ASSURANCE COMPANY OF NEW YORK, Appellant,**

**v.**

**Sophie BASIL and Frank Basil, Appellees.**

**No. 3160.**

District of Columbia Court of Appeals.

Argued Feb. 4, 1963.

Decided March 28, 1963.

Robert L. Ellis, Washington, D. C., with whom Anthony J. Siciliano and John J. Daly, Washington, D. C., were on the brief, for appellant.

Richard A. Micheel, Washington, D. C., for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellees brought this action against Edward Brennan, a licensed real estate broker, and the Phoenix Assurance Company of New York, Brennan's surety, for failure to turn over monies collected by Brennan from tenants leasing property owned by appellees. The several questions raised on appeal center upon a determination of the date this cause of action accrued under Code 1961, 45–1405.[1]

Brennan was engaged by appellees in 1953 to manage their property, to collect the rents and apply them to a first trust held by the First Federal Savings and Loan Association, and to remit the balance to appellees at indeterminate periods. While appellees were abroad they were notified on May 17, 1960, that three payments on the first trust had not been made. The next day they sent the following telegram to their local attorney:

"Please contact First Federal for information Loan V625. Brennan has

---

[1]. Insofar as is pertinent, Code 1961, 45–1405 provides that a person aggrieved by the failure of a real estate broker to conduct himself and his business in accordance with the requirements of the act shall have a right to bring suit against the surety on the bond and to recover "any damages sustained by reason of any act, representation, transaction, or conduct of the principal which may be pro- hibited by this chapter or enumerated as one of the causes for suspension or revocation of a license granted hereunder." One of the grounds enumerated in 45–1408 for the suspension or revocation of a license is that the broker has "[f]ailed, within a reasonable time, to account for or to remit any money, valuable documents, or other property coming into his possession which belong to others."

collected rents and not paid three months. First Federal advised foreclosure intent. Please pressure Brennan."

The attorney verified that the payments had not been made and arranged a meeting with Brennan.

Some two or three weeks after receiving the cable of May 18, appellees' attorney conferred with Brennan. In response to the attorney's inquiries, Brennan said that he had had secretarial problems, that his current bookkeeping and records were in a "mess," and that he would take care of the Basil complaint and bring the account into balance as soon as he could straighten out his bookkeeping. The meeting terminated and Brennan's assurances were communicated to appellees by their attorney. In the meantime appellees balanced the mortgage account by forwarding their personal check to First Federal on June 16, 1960. On July 1, appellant terminated its bond.

Appellees sent a second cable to their attorney on October 10, 1960, to the effect that the payments for the months of August and September had not been made by Brennan and that the mortgage account was again delinquent. The attorney was instructed to remove Brennan as rental agent. Brennan was immediately discharged and the account was again balanced when appellees forwarded a personal check to First Federal.

Appellees filed suit on July 12, 1961, against Brennan and the Phoenix Assurance Company. Brennan was not served and

hence was not a party to the action. The trial court accepted the uncontroverted facts set forth above and concluded that the occurrences which took place "on and around May 18, 1960, did not constitute such a demand upon the broker as would commence the running of the one year statute of limitations on the broker's bond required of him by law and filed with the Real Estate Commission." Judgment was entered for appellees in an amount stipulated by the parties, and this appeal followed.

Appellees concede that Brennan breached his agreement in May 1960 when he failed to apply the rents he collected to the first trust held by First Federal. They contend, however, that a demand upon Brennan was necessary before a cause of action could be perfected, and that this requirement was not satisfied until October 1960 when Brennan was discharged as their rental agent.

We are of the opinion that appellees' cause of action against the surety on the bond was barred by the one-year statute of limitations,[2] their claim having accrued in May 1960 when appellees were notified of the default and of the intention of the holder of the first trust to foreclose. Brennan was engaged by appellees to manage their property and to protect them from foreclosure by forwarding the rents he collected to the holder of the first trust.[3] He was entrusted with a continuing obligation and his failure to act on the dates fixed for performance subjected appellees to an immediate risk. There is nothing in the nature or terms of the agreement which would indicate that a demand upon Brennan was a prerequisite to performance,[4] and indeed a

---

2. Code 1961, 45–1405.

3. The circumstances here are unlike those in Cundiff v. Wills, D.C.Mun.App., 76 A. 2d 55 (1950), relied upon by appellees, where a prospective land purchaser sought to recover a deposit held by a broker.

4. Cf. Mack v. Massachusetts Bonding & Ins. Co., 136 Cal.App. 63, 27 P.2d 934 (1933), where plaintiff became dissatisfied

and demanded the return of money delivered to the broker for the purchase of realty; Coover v. Cox, 95 Cal.App. 1, 272 P. 343 (1928), where the broker, under the terms of the agreement, was not required to return the deposit until demand was made; Aetna Casualty & Surety Co. v. State, Tex.Civ.App., 86 S. W.2d 826 (1935), where the obligation was implied rather than contractual with no fixed date of performance.

demand under these circumstances would be not only unnecessary but contrary to the very purpose of the agreement.[5]

We hold that under the circumstances of this case the claim was barred by the statute of limitations, that the cause of action accrued in May when appellees were notified that the payments on the first trust had not been made, even though the rents had been collected, and that the holder of the first trust intended to foreclose.

Reversed.

5. See Woolsey v. Trimble, 18 F.2d 908, 912 (6th Cir., 1927), wherein the court said that the reason for the rule that a demand must precede the action and that the cause of action does not accrue until a demand is made, is to save the agent from harassment by a lawsuit without being given the opportunity to perform; that a demand is unnecessary where it would be impractical or inconvenient, and " * * * the rule is, we think, properly applicable in those cases only in which it is either expressly agreed or fairly inferable from the facts that the money or property was to be kept and returned only when called for, and is not properly applicable to cases like the present, in which affirmative duties and obligations are imposed, a failure to perform which in and of itself constitutes a breach and gives rise to an immediate right of action without a previous demand." See generally, Annot., 141 A.L.R. 361, 376–383.